[No. 13190.    Department One. — February 7, 1890.]

JOHN M. FULWEILER, Respondent, *v.* HOG'S BACK CONSOLIDATED MINING COMPANY, Appellant.

DEFAULT — EXCUSABLE NEGLECT. — Instance of relief against a judgment by default on the ground of excusable neglect.

ID. — AFFIDAVIT OF MERITS — ANSWER. — A sworn answer positively denying the material allegations of the complaint is a sufficient affidavit of merits.

APPEAL from orders of the Superior Court of Placer County refusing to set aside a default.

The facts are stated in the opinion.

*W. C. Wallace,* and *Blanchard & Swisler,* for Appellant.

*John M. Fulweiler,* and *E. L. Craig,* for Respondent.

HAYNE, C. — This is an appeal by defendant from orders refusing to set aside a default. The defendant's first motion to set aside the default was denied. Leave was subsequently granted to renew the motion, and the motion was renewed upon additional affidavits, but was again denied. There was made, also, a motion to change the place of trial, but the counsel for the appellant states in his brief that this motion was abandoned; and the appeal is taken only from the orders refusing to set aside the default.

We think that the default should have been set aside.

The action was commenced at Auburn, in the county of Placer, where the plaintiff's attorney resided. On January 7, 1889, service was made in Placer County upon the president of the defendant, which had its principal place of business in El Dorado County, where its officers resided. Within three days after service the defendant retained the firm of Blanchard & Swisler, who had their office in Placerville, El Dorado County, as its attorneys for the defense of the action. They prepared

a demurrer to the complaint, and moving papers upon an application to change the venue, and on January 17th, which was the last day for the filing and service of said papers, Mr. Blanchard went to Auburn for the purpose of serving and filing them, "and arranging for the motions and proceedings in said cause."

The first misfortune which befell the attorney was that he mistook the connection of the trains. He was informed at Placerville, "both upon inquiry and by the time-tables, etc., of the railroad company," that a train left Sacramento at 1:05, P. M., and arrived at Auburn at 3:30, P. M., of the same day, which would have given him ample time to have attended to the filing and service of the papers; and knowing that he could get to Sacramento in time to connect with such a train, he proceeded to do so. Upon arriving there, however, he learned for the first time that the train mentioned had been discontinued three days previously. He took the next train from Sacramento to Auburn, which was a freight train, and was due at the latter place at 6:15, P. M. From one of the way-stations he telegraphed to the plaintiff's attorney that he was on the freight train, and requested him to detain the clerk of the court. In compliance with this telegram the plaintiff's attorney sent word to the clerk, who promised " to be around, either at his office or at his residence, so as to meet and accommodate Mr. Blanchard, up to seven o'clock, P. M., of that day."

The freight train arrived at 6:30, P. M. According to the affidavit of Mr. Blanchard, "it was dark and raining at the time, but that there might be no delay, he procured a lantern, umbrella, and the services of one Graham, and at once, through the mud and rain," went first to the residence of the clerk, and then to his office, and then to the places about town where he was informed that the clerk was likely to be; but he did not succeed in finding him. He then inquired for the residence of the judge,

in order to get an order extending the time to plead, but was informed that the judge resided "about one mile away from said lower town, and had not been in town since about five, P. M." He was also informed that the plaintiff's attorney "had been violently kicked by a horse, and was unable to be out of his house." The affidavit of Blanchard further states that "by the time he had completed his searches for said clerk, judge, etc., it was 9:30 o'clock, P. M., of said 17th of January, and very dark, and raining all the time"; that he was a stranger to the place; and that, "after the search aforesaid, he was exhausted and sick"; and that "when he gave up said search, at about 9:30, P. M., on said 17th, he really did not consider it decorous or proper for him to make any further exertion to save a default, but honestly and in good faith thought he was excusable for the default." At 8:30 or 9 o'clock of the next day the papers were served and filed, but the default was entered before eight o'clock at the request of the plaintiff's attorney.

The foregoing facts appear without substantial conflict. The respondent's affidavits show, among other things, that the defendant's attorney was mistaken as to some of the hours which he gives; that the clerk remained at his residence until seven, P. M.; and that it was after that hour that the attorney called there. But we do not consider this material.

There is nothing in the respondent's position that there was no necessity for the appellant's attorney to go in person to Auburn, and that the papers could have been sent by mail. Going in person showed extra caution; and in addition to this, the attorney wished to arrange for the hearing of the motions, etc. It was quite proper for him to go in person. Nor can he be charged with imprudence in not taking the stage between Placerville and Auburn. It does not appear wherein the stage route was preferable to the railroad. But assuming that it was preferable, the railroad was good enough for the

purpose, if the usual train had been running; and the attorney had reasonable ground to believe that it was running.  He was informed on inquiry that there was such a train, and the railroad time-tables assured him of the fact; and the discontinuance of the train within three days was a thing which may well have taken a prudent man by surprise, notwithstanding the fact that the change was published in certain newspapers.  It was an accident against which ordinary prudence did not guard.

After this accident the attorney seems to have used reasonable endeavor to avert the consequences.  It may be conceded that after he arrived at Auburn it would have been better to have gone at once to find the judge of the court, or the plaintiff's attorney, instead of looking for the clerk.  But the evidence seems to us to show an honest and faithful effort to comply with the law, and although such effort was not as well directed as it might have been, we think that when the attorney, tired, cold, and sick, gave up his search in a strange town at half-past nine o'clock on a dark and rainy night, he had done enough to entitle him to relief under the wise and liberal rule which recognizes that there may be cases of neglect which are excusable.

The sworn answer was a sufficient showing of merits.

We therefore advise that the orders refusing to set aside the default be reversed, with directions to the trial court to permit the answer to be filed.

BELCHER, C. C., and GIBSON, C., concurred.

THE COURT.—For the reasons given in the foregoing opinion, the orders refusing to set aside the default are reversed, with directions to the trial court to permit the answer to be filed.