[Civ. No. 767. First Appellate District.—December 13, 1910.]

## E. A. HETTINGER, Respondent, v. F. C. THIELE, Appellant.

BUILDING CONTRACT—DESTRUCTION OF UNCOMPLETED BUILDING BY EARTHQUAKE—LOSS APPORTIONED—PROVISION CONSTRUED.—A provision in a building contract that, in case the work provided shall, before completion, be wholly destroyed by fire, earthquake, or other unforeseen act of God, then the loss occasioned thereby shall be sustained by the owner to the extent that he has paid installments thereon, or that may be due under the fifth clause of the contract, which regulates the terms of payment, and the loss occasioned to the contractor shall be for the uncompleted portion of said work upon which he may be engaged at the time of the loss, and for which no payment is yet due under said fifth clause of the contract, provides a rule by which the loss shall be apportioned in the event of the destruction of the building before completion by the earthquake of April 18, 1906, and does not contemplate any rebuilding, by either party, in that event.

ID.—PAYMENTS DUE CONTRACTOR—ARCHITECT'S CERTIFICATE—MEANS OF ASCERTAINMENT UNDER EXISTING CONTRACT — INAPPLICABILITY UNDER DESTRUCTION.—While a provision in the fifth clause of the contract for an architect's certificate is made as a means of showing to the owner the amount earned and due under the contract, while it continues in force, yet where such clause also provides for the payment of seventy-five per cent of the amount earned and due at fixed stages of the work, as it progresses, and the amount must be due before the certificate is made, such provision for an architect's certificate does not apply when the building is destroyed, and where a payment was then earned and was due, it is not con-

templated that the contractor cannot recover that amount merely because at the time of destruction he had not obtained or demanded an architect's certificate, especially where the owner agrees that in that event he is to lose all that "may be due under the fifth clause of this contract."

ID.—EXCESSIVE FINDING AS TO AMOUNT DUE UNDER PLEADINGS AND EVIDENCE—MODIFICATION OF JUDGMENT.—Where the finding as to the amount due is excessive in a small sum, contrary to the pleadings and evidence, the judgment will be modified by deducting that sum from the judgment, and it will be affirmed as so modified.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial.   M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

S. F. Leib, and W. H. H. Hart, for Appellant.

B. A. Herrington, and W. H. Johnson, for Respondent.

COOPER, P. J.—This action was brought to recover the amount claimed to be due to the contractor under the terms of a contract for a building which was in the course of construction and uncompleted on the eighteenth day of April, 1906, at which time it was wholly destroyed by the great earthquake.   The case was tried with a jury, to whom special issues were submitted, and upon the verdict as to such special issues judgment was entered in favor of the plaintiff.

No serious question is raised as to the sufficiency of the evidence to justify the finding of the jury upon any question submitted to it.   Some questions of law are discussed, particularly as to instructions given to the jury, or offered by the defendant and refused by the court, but they all depend upon the main question as to the construction to be placed upon the contract; and as the case turns upon such construction we will discuss that and nothing more.

The contract was one by which the plaintiff agreed to build for defendant a building therein described in the town of Palo Alto for the price of $21,965.   It undertook to provide for the apportionment of the loss as between the owner and the contractor in case the building, during its progress and before completion, should be destroyed by earthquake; and it is the

construction of its provisions upon this question that we are
called upon to decide.

The only provisions of the contract bearing upon the ques-
tion are the fifth and twelfth clauses, which are as follows:

"Fifth.—The owner agrees, in consideration of the per-
formance of this agreement by the contractor, to pay or cause
to be paid to the contractor, his legal representatives or as-
signs, the sum of twenty-one thousand nine hundred and
sixty-five (21,965) dollars in United States gold coin, at the
times and in the manner following, to wit: Seventy-five per
cent of the said twenty-one thousand nine hundred and sixty-
five dollars as the work progresses, twenty-five per cent of the
said twenty-one thousand nine hundred and sixty-five dollars
thirty-five days after the acceptance of the building.

"*Provided,* That when each payment or installment shall
become due, and at the final completion of the work, certifi-
cates in writing shall be obtained from said C. E. Branson,
stating that the payment or installment is due or work com-
pleted, as the case may be, and the amount then due; and the
said C. E. Branson shall at said times deliver said certificates
under his hand to the contractor, or, in lieu of such certifi-
cates, shall deliver to the contractor in writing, under his
hand, a just and true reason for not issuing the certificates,
including a statement of the defects, if any, to be remedied,
to entitle the contractor to the certificate or certificates. And
in the event of the failure of the architect to furnish and de-
liver said certificates, or any of them, or in lieu thereof the
writing aforesaid, within three days after the times aforesaid,
and after demand therefor made in writing by the contractor,
the amount which may be claimed to be due by the contractor,
and stated in the said demand made by him for the certificate
shall, at the expiration of said three days, become due and
payable, and the owner shall be liable and bound to pay the
same on demand.

"In case the architect delivers the writing aforesaid in lieu
of the certificates, then a compliance by the contractor with
the requirements of said writing shall entitle the contractor to
the certificate."

"Twelfth.—In case said work herein provided for should,
before completion, be wholly destroyed by fire, defective soil,
earthquake or other act of God which the contractor could

not have reasonably foreseen and provided for, then the loss occasioned thereby shall be sustained by the owner to the extent that he has paid installments thereon, *or that may be due under the fifth clause of this contract;* and the loss occasioned thereby and to be sustained by the contractor shall be for the uncompleted portion of said work upon which he may be engaged at the time of the loss, and for which no payment is yet due under said fifth clause of this contract. . . ."

It was intended that as the work was performed by the contractor he should be entitled to seventy-five per cent of the value of the work so performed, measured by the contract price, that is, for example, when the contractor had placed materials and labor in the building in accordance with the plans and specifications of the value of $1,000, he should be entitled to a payment of $750, and so on from time to time. As the work progressed, and as fast as it progressed and from day to day, the contractor was entitled to seventy-five per cent of its value. Of course, it would have been unreasonable for the contractor to have claimed and demanded the amount due from day to day, and insisted upon the architect giving him a certificate from day to day as to the amount that had become due. It must be presumed that the parties intended the contract to be reasonably construed, and that with such view the contractor would only require payment to be made at reasonable intervals as the work progressed, so as to enable him to pay for his materials, and to pay the wages of carpenters and artisans employed by him. In fact this must have been the course pursued, because no question appears to have been made as to the payment of installments up to the time of the earthquake, which payments amounted to $8,800. The twelfth clause of the contract makes provision for loss in case the building should be wholly destroyed by earthquake. It was evidently in the mind of the parties that in such case the contract would end; that the contractor would not be required to commence again and build an entire new building, nor would the owner be required to pay for a new building. The provision as to the loss shows that in case the building should before completion be wholly destroyed, the parties intended that the owner should lose all payments that he had made to the contractor and all the sums that had become due under the contract. On the other

hand, the contractor was to lose all sums that had not become due for the uncompleted portions of the work. If the parties had in mind that they should, after adjusting their losses in accordance with the contract, be bound by the same contract to rebuild, on the same terms as under the original contract which had ended for the building which had been destroyed, and to contract as to such building, they could easily have said so; but they seem *ex industria* to have made no such provision. There are many reasons why they did not do this. The owner of the building after his losses may not have been able to pay for another building of the same cost. The contractor may have been unable to rebuild on the same terms. The ground on which the building was located may have been so changed as to its surface, or the immediate vicinity in which the building was being erected so changed as a business location, that it would be an absolute loss to the owner to have paid for another building. We therefore conclude that the contract provides a rule as to the loss that was to be borne by each party by reason of the earthquake, and that it does not contemplate any rebuilding by the contractor.

This appears to us to be the reasonable, logical and just construction to be given to the contract. The twelfth clause of the contract provides that the owner shall lose the payments he has already made and the payments that "may be due under the fifth clause of this contract." The owner had paid $8,800, and there is no question as to that being his loss under the terms of the contract. Then we must turn to the twelfth clause of the contract to see what was due under it. It makes seventy-five per cent of the money payable "as the work progresses." It also provides that when each payment or installment shall become due certificates in writing shall be obtained from the architect, stating that "the payment or installment is due or work completed as the case may be"; and "In the event of the failure of the architect to deliver said certificates or any of them, or in lieu thereof the writing aforesaid, within three days after the times aforesaid, and after demand therefor made in writing by the contractor, the amount which may be claimed to be due by the contractor, and stated in the said demand made by him for the certificate, shall, at the expiration of said three days, become due and payable, and the owner shall be liable and bound to pay

the same on demand." It is insisted by appellant that under this clause nothing could be due until after the contractor had fully complied with the provisions of the contract and obtained the architect's certificate, or made the proper demand in writing for such certificate. Such evidently would be held to be the law during the life of the contract and before it had been ended by the destruction of the building; but we cannot hold that the contract contemplated that the contractor could not recover the amount that had become due at the time of the earthquake simply because he had not obtained the architect's certificate. If such were the law the contractor would have had to lose the whole amount, provided it had not been paid and no architect's certificate obtained at the time the building was destroyed. The provision of the contract as to obtaining an architect's certificate was only a means of informing the owner that certain work had been done and the amount due therefor, so that he could intelligently make payments during the progress of the work. It was a method of having an expert of his own selection pass upon and state the amount that had become due. Such amount was due without obtaining such certificate, although during the life of the contract, while the building was in course of construction, it would have been necessary to obtain such certificate, or at least to have complied with the provisions of the contract as to demanding it before suit could be brought. The twelfth clause of the contract bears out this construction, for it provides that the owner shall not only lose all that he has paid already, but "all that may be due under the fifth clause of this contract"; and the loss to the contractor shall be for the uncompleted portion "for which no payment is yet due under said fifth clause."

Now the fifth clause makes seventy-five per cent of the value of the work and labor performed due and payable as the work progresses. The work had progressed up to the time of the earthquake, and seventy-five per cent of the value of such work, measured by the contract estimates, and taking into consideration the moneys paid out by the contractor, was due to the contractor, less the amounts that had already been paid. The jury found that the value of the work and materials done and furnished by the contractor, and actually used in the construction of the building up to the time it was

destroyed, was $16,473.75. Taking seventy-five per cent of this we have $12,355.31¼; then deducting the payments that had already been made—$8,800—leaves $3,555.31¼, being the amount of the general verdict of the jury.

The finding of the jury that the value of the work done and material furnished up to the time of the earthquake was $16,473.75 is contrary to the express declaration in the pleading, and also contrary to the evidence. The complaint alleges that such value was $15,664.75, and the plaintiff testified: "Up to April 18, 1906, I had furnished materials and performed work and labor in the construction of the building mentioned in the contract to the extent of $15,664.75. This is the amount of materials furnished for the building and work done thereon up to April 18, 1906. The defendant has paid $8,800 on account of the contract." The verdict is therefore excessive to the extent of $606.65. The judgment should therefore be modified by deducting said amount therefrom, and should be entered for the sum of $2,948.56, and entered as of the date of its former entry.

The court below is directed to modify said judgment accordingly, and as so modified it is affirmed.

The order denying a new trial is also affirmed, the appellant to recover his costs on this appeal.

Kerrigan, J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1911.