[S. F. No. 6539.    Department One.—June 23, 1915.]

# M. J. SAVAGE, Appellant, v. LIZZIE D. SMITH, Respondent.

APPLICATION FOR RELIEF FROM DEFAULT—COMPLIANCE WITH RULE RE-
QUIRING STATEMENTS OF GROUNDS.—A motion to set aside a default
entered against defendant for failure to answer within ten days
after the overruling of a demurrer, based upon an affidavit of coun-
sel indicating that the motion was made under section 473 of the
Code of Civil Procedure on the ground of excusable neglect, is a
sufficient compliance with the rule of the superior court now em-
bodied in section 1010 of the Code of Civil Procedure to the effect
that the grounds of such motion must be stated in the notice.

ID.—AFFIDAVIT OF MERITS—VERIFIED ANSWER AS SUCH.—The require-
ment that such motion be accompanied by an affidavit of merits
is met by the fact that a verified answer to the complaint had been
filed after the default was entered and was on file at the time
notice, based on the records and files in said action, was given.

ID.—DISCRETION OF COURT—DOUBT TO BE RESOLVED IN FAVOR OF AP-
PLICATION.—An application to be relieved from a default under
section 473 of the Code of Civil Procedure is addressed to the
sound discretion of the trial court and the action of that court will
not be set aside on appeal unless an abuse of discretion clearly
appears. Any doubt that may exist should be resolved in favor of
the application to the end of securing trial upon the merits.

ID.—FACTS SHOWING DISCRETION PROPERLY EXERCISED.—Where, in an
application to be relieved from default on failure to file an answer
within the time, it appears that defendant's counsel fully intended
to make a defense, that he endeavored to have the time extended,
and that he had his answer ready for filing within a few minutes
after the opening of the clerk's office on the first business day
after the expiration of his time to answer, it would be out of the
question to hold that the trial court abused its discretion in vacating
the default.

BUILDING CONTRACTS—FIRE DURING CONSTRUCTION—DIVISION OF LOSS
UNDER PROVISIONS OF CONTRACT.—Where a building contract pro-
vided for payments of seventy-five per cent of the value of work
completed on the first and fifteenth days of each month, the balance
of twenty-five per cent to be paid thirty-five days after completion,
and that in case of destruction of the building by fire while in process
of construction the owner should bear the loss of all payments made
or then due, and the contractor the loss for all labor and materials
for which payment was not then due, and the building was totally de-

stroyed by fire on the 18th of a certain month, the contractor is entitled to recover seventy-five per cent of the cost of labor and materials furnished up to the 15th of that month, but cannot recover for work and labor furnished between the 15th of that month and the time of the destruction of the building.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. J. A. Plummer, Judge presiding.

The facts are stated in the opinion of the court.

R. H. Countryman, for Appellant.

Andros & Hengstler, and J. Alva Watt, for Respondent.

SLOSS, J.—The plaintiff appeals from a judgment in favor of the defendant, and from an order denying his motion for a new trial.

The first point made by the appellant is that the court erred in vacating a default entered against the defendant for her failure to answer the complaint. The action was commenced on September 29, 1906, and was brought to foreclose a lien upon defendant's land for a balance alleged to be due upon a building contract. The defendant demurred to the complaint and her demurrer was overruled with leave to answer within ten days from the twenty-first day of November, 1906. On December 3, 1906, the default of the defendant for failure to answer was duly entered. On the following day, December 4th, the said defendant served and filed her notice of motion to set aside the default. The notice stated that the motion would be based "upon the affidavit of Louis T. Hengstler, a copy whereof is attached hereto, and upon the records and files in said action." Among the files was a verified answer, which had been filed by the defendant on the third day of December, 1906, but after the entry of default on that day. A copy of the affidavit of Mr. Hengstler, attorney for said defendant, accompanied the notice.

When the motion came on to be heard, the plaintiff objected to the hearing of the motion upon the grounds that there was no affidavit of merits on behalf of the defendant, and that the notice of motion did not state the ground upon which the motion would be made, as required by a rule of the superior

court. The court continued the hearing to a later date. During the period intervening before the motion came on, the defendant filed further affidavits. The notice itself was not amended in any way.

Upon the foregoing papers and other evidence, the court granted the motion to vacate the default.

It is true that the notice of motion did not comply with the requirement of the rule, now embodied in section 1010 of the Code of Civil Procedure (amended in 1907), that the grounds of motion must be stated in the notice. It appears, however, that the notice of motion stated that it would be made upon the records and papers on file and upon the affidavit of which a copy was served with the notice. The records referred to showed that no answer had been filed until default had been entered, and the affidavit of Mr. Hengstler made it perfectly plain that he was seeking therein to establish a showing that the failure to file the answer within time had been caused by excusable neglect. The notice, together with the records and affidavit therein referred to, were sufficient to apprise the plaintiff of the fact that the purpose of the proposed motion was to seek relief under section 473 of the Code of Civil Procedure, and that the ground of motion necessarily was the defendant's excusable neglect, which would justify relief under that section. The objection that the grounds of the motion were not stated in the notice was therefore properly disregarded. (*Reher* v. *Reed,* 166 Cal. 525, [Ann. Cas. 1915C, 737, 137 Pac. 263].)

The further objection that there was no affidavit of merits is met by the consideration that a verified answer setting forth a defense to the cause of action alleged in the complaint was actually on file at the time the notice was served. That such verified answer meets all the requirements of an affidavit of merits is, of course, well settled. (*Bailey* v. *Taaffe,* 29 Cal. 423; *Fulweiler* v. *Min. Co.,* 83 Cal. 126, [23 Pac. 65]; *Melde* v. *Reynolds,* 129 Cal. 308, [61 Pac. 932].) This answer, whether properly filed or not, was in fact one of the "records and files in said action," referred to in the notice, and was certainly available as an affidavit showing a meritorious defense. (See *Reher* v. *Reed,* 166 Cal. 525, [Ann. Cas. 1915C, 737, 137 Pac. 263].)

We need not go into details in discussing the contention of
the appellant that the facts shown in defendant's affidavit
were not such as to justify a vacating of the default for ex-
cusable neglect.  As we have recently had occasion to say:
"The law governing this class of cases is so well settled and
has been so often declared in the decisions of this court that
we may dispense with the citation of authorities.  An ap-
plication to be relieved from a default under section 473 of
the Code of Civil Procedure is addressed to the sound discre-
tion of the trial court and the action of that court will not
be set aside on appeal unless an abuse of discretion clearly
appears.  Any doubt that may exist should be resolved in
favor of the application to the end of securing a trial upon
the merits."  (*Jergins* v. *Schenck,* 162 Cal. 747, [124 Pac.
426].)  In the case at bar it appears that the answer was
due on December 1, 1906.  This was a Saturday.  Mr. Heng-
stler's affidavit shows that the defendant's business agent,
who had knowledge of the facts of the case, was out of the
state during the nine days ending Friday, November 30th.
That on the 30th of November and the following day Mr.
Hengstler endeavored to secure from Mr. Countryman, plain-
tiff's counsel, an extension of time to answer, but was refused
this accommodation.  He also made some effort to secure an
order of court extending his time, but for one reason or an-
other, did not succeed in this attempt.  On Saturday and
Sunday, December 1st and 2d, he prepared the answer, had
it verified early Monday morning, and presented it for filing
at 9:30 o'clock of that morning.  The default had already
been entered at that time.  The record indicates that the
prior negotiations between the parties had resulted in some
ill feeling between the respective counsel, and that this was
the cause of Mr. Countryman's refusal to grant further ex-
tensions.  We are not concerned with the merits of these
differences.  It does appear that defendant's counsel fully
intended to make a defense, that he endeavored to have his
time extended and that he did have his answer ready for filing
within a few minutes after the opening of the clerk's office
on the first business day after the expiration of his time to
answer.  It would be out of the question to hold that under
these circumstances the trial court abused its discretion in
vacating the default.

On the merits of the case but one point is made, and that

is that the findings do not justify the judgment. From the findings it appears that the defendant Lizzie D. Smith was the owner of a lot of land on Mission Street in the city of San Francisco. On March 10, 1906, she made a contract with the plaintiff by the terms of which the plaintiff agreed to erect and construct a building on said land for the sum of $23,100, payable as follows: seventy-five per cent of the amount of the work completed on the first and fifteenth days of each month, and the balance to be paid thirty-five days after filing of notice of completion. Under this contract the plaintiff had furnished, up to and including the fifteenth day of April, 1906, material and labor of the value of $15,610.95. On the eighteenth day of April, 1906, the building then in course of construction was, without the fault of either of the parties, wholly destroyed by fire, causing a total loss of all the labor and materials theretofore furnished and used in the construction. Thereupon all work upon the building ceased and the contract was abandoned by both parties. The plaintiff in due time filed a claim of lien for $16,602.90. The total value of all the labor and materials used in the construction of said building up to and including the fifteenth day of April, 1906, was $15,610.95. The value of labor and materials used in such construction after the fifteenth day of April and up to the time of the destruction by fire was $2,000. The contract contained this clause: "Twelfth,—In case said work herein provided for should, before completion, be wholly destroyed by fire, defective soil, earthquake or other act of God which the contractor could not have reasonably foreseen and provided for, then the loss occasioned thereby shall be sustained by the owner to the extent that he has paid installments thereon, or that may be due under the fifth clause of this contract; and the loss occasioned thereby and to be sustained by the contractor shall be for the uncompleted portion of said work upon which he may be engaged at the time of the loss, and for which no payment is yet due under said fifth clause of this contract." The fifth clause of said contract was as follows: "Fifth,—The owner agrees in consideration of the performance of this agreement by the contractor, to pay or cause to be paid to the contractor, his legal representatives or assigns, the sum of 23,100 dollars in United States gold coin, at times and in the manner following, to wit: Seventy-five per cent (75%) of the amount of work com-

pleted on the first and fifteenth days of each month, the balance to be paid thirty-five days after notice of completion is filed—provided, that when each payment or installment shall become due, and at the final completion of the work, certificates in writing shall be obtained from said architect, stating that the payment or installment is due or work completed, as the case may be, and at the final completion of the work, certificates in writing shall be obtained from said architect, stating that the payment or installment is due or work completed, as the case may be, and the amount then due; and the said architect shall at said times deliver said certificates under his hand to the contractor, or, in lieu of such certificate, shall deliver to the contractor in writing under his hand, a just and true reason for not issuing the certificates, including a statement of the defects, if any, to be remedied, to entitle the contractor to the certificate or certificates. . . . "

After the destruction of the building, the plaintiff, together with the defendant and one of her architects, estimated the value of the labor and materials used in the construction up to the fifteenth day of April, and said architect made and issued his certificate certifying that the plaintiff was entitled to payment of the sum of $11,708.21, being seventy-five per cent of the total value of all labor and materials furnished to be used and used in the construction of said building up to the fifteenth day of April. This amount, together with a further sum of $51.90 claimed by the plaintiff, was paid by the defendant to the plaintiff on the thirty-first day of October, 1906, and the court finds this to be the full sum due, owing, and payable by the defendant to the plaintiff.

It appears from these findings that the plaintiff received seventy-five per cent of the value of all work done and materials furnished by him up to the fifteenth day of April, and nothing for the work and labor furnished between the fifteenth and the eighteenth of April. The contention is that he is entitled to receive the remaining twenty-five per cent of the first item and the whole of the second. We do not think either of these contentions can be sustained.

Under the fifth clause of the contract, the owner agreed to pay the contract price as follows: Seventy-five per cent of the amount of work completed on the first and fifteenth days of each month, and the balance thirty-five days after filing

of notice of completion. In case of the destruction of the building after a portion had been completed a loss would necessarily fall upon one or both of the parties. By the twelfth clause the owner and the contractor expressly stipulated for the apportionment of such loss. When the parties to the contract framed that clause "they had in mind a contingency under which one or both of the parties must suffer a loss. They deliberately undertook to provide how that loss should be borne. The contract that they made is perfectly lawful, and we know of no reason why courts should not give it effect according to its terms." (*Seebach* v. *Kuhn,* 9 Cal. App. 485, 489, [99 Pac. 723].) The provision was that the owner should lose to the extent of the installments paid or due under the fifth clause, and that the contractor should suffer the loss of the uncompleted portion of the work upon which he was engaged and for which no payment was yet due under said fifth clause. The payments to which the contractor was entitled while construction was in progress consisted of seventy-five per cent of the value of the work completed on the first and fifteenth days of each month. The remaining twenty-five per cent was not due until thirty-five days after completion of the building. How, then, can it be claimed that the contractor was entitled to receive anything more than seventy-five per cent of the value of the work done by him? The twenty-five per cent, in value, of the work done was clearly a portion of the work for which no payment was yet due under the fifth clause of the contract, and the loss of this, under the agreement, fell on the contractor.

This covers the claim for work done up to the fifteenth day of April. For the work done after that date and up to the eighteenth day of April the appellant claims that he is entitled to receive, if not all of the value, at least seventy-five per cent thereof. But under the fifth clause of the contract he was not entitled to any payment for work done between the fifteenth and eighteenth day of April. All that he was entitled to was seventy-five per cent of the amount of work completed on the first and fifteenth days of each month. He received the seventy-five per cent of the work done up to the fifteenth day of April, and would not be entitled to any further payment until the first day of May. On that date

his right to receive seventy-five per cent of the work done since the fifteenth day of April would accrue. But before this time arrived the building had been completely destroyed. The work done during these two or three days was, therefore, "an uncompleted portion of said work upon which he" was "engaged at the time of the loss, and for which no payment" was "yet due under said fifth clause of said contract." The loss of this portion of the work, therefore, fell upon the plaintiff. The case differs materially from *Hettinger* v. *Thiele* 15 Cal. App. 1, [113 Pac. 121], where, under a contract containing the same twelfth clause, the contractor was held entitled to seventy-five per cent of the work done by him up to the time of the destruction. In that case, the fifth clause, dealing with payments during construction, provided, simply, that the owner was to pay seventy-five per cent of the total contract price "as the work progresses." The holding was that under this agreement the contractor's right to seventy-five per cent accrued as the work progressed from day to day. But this conclusion cannot be applied to a contract which calls for payment of seventy-five per cent of the work completed on the first and fifteenth days of each month. The right to payment does not accrue until the specified dates arrive.

The appellant contends that the twelfth clause, providing for apportionment of loss, is meaningless when applied to a contract in which the successive payments to the contractor are based upon a percentage of the value of work done at given times, rather than upon the completion of specified portions of the work. We are unable to perceive any reason for this distinction. The seventy-five per cent payments to be made upon the first and fifteenth days of each month are certainly "installments" payable under the contract, and the twelfth clause plainly limits the loss to be sustained by the owner to the installments paid by him or due under the fifth clause of the contract. Even if this interpretation were less obvious, we should still be required to adopt it in preference to a construction which would deny all meaning to a provision which the parties have incorporated in their agreement. (Civ. Code, sec. 1641.) It may be added that in *Hettinger* v. *Thiele,* 15 Cal. App. 1, [113 Pac. 121], the court had no difficulty in applying the twelfth clause to a contract

calling for the payment of a percentage of the work done as the construction progressed.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Lawlor, J., concurred.