[Civ. No. 24762. Second Dist., Div. Two. Oct. 20, 1960.]

CONTINENTAL MANUFACTURING CORPORATION (a Corporation), Respondent, v. UNDERWRITERS AT LLOYDS LONDON (an Association), Appellant.

*Assigned by Chairman of Judicial Council.

Callaway, Kirtland & Packard and Abe Mutchnik for Appellant.

Carl G. Cramoline and Elwood Bowles for Respondent.

NOURSE, J. pro tem.*—Defendant appeals from a money judgment against it.

The action is one upon a policy of "Hull insurance" issued by the defendant underwriters upon an airplane owned by the plaintiff. By the terms of the policy, defendant agreed "[t]o pay for any loss of or damage to the aircraft." The policy provided that the underwriters "shall be subrogated in case of payment of any claim under this Certificate . . . to all of the Assured's rights of recovery therefor against persons, corporations, [etc.]. . . ." After the issuance of the policy, and while it was in force, the plaintiff entered into a contract with a corporation known as "Bell Air Service Incorporated" which corporation was owned and managed by one Paul N. Bell.[1] By this contract, plaintiff leased the insured aircraft to Bell Air Service, hereinafter called "Bell." Bell agreed to rent the aircraft only to qualified pilots, agreed to charge $22 per hour for the rental of said aircraft and to pay to plaintiff the sum of $16 per revenue hour. It was further agreed that all normal expenses for fuel, oil and repairs should be paid by Williams provided that this shall not include costs *"due to negligence on the part of BAS employees in the handling of said aircraft on the ground."*

Paragraph V of the agreement reads, in part, as follows: ". . . BAS will not carry Hull insurance on said aircraft and *shall not be responsible for damage to said aircraft* and shall be held harmless from any occurrence in which said aircraft is involved." (Whenever any language used or quoted in this opinion is italicized, italics are ours unless otherwise mentioned.)

While the aircraft was in the possession of Bell, under the terms of the lease agreement, it was, while in flight, in a

---

[1]All of the facts stated herein were stipulated to by the parties and no parol evidence was received.

*Assigned by Chairman of Judicial Council.

collision with another aircraft, and as a result of that collision became a total loss. At the time of the collision, the aircraft was being piloted by Paul N. Bell. Written proof of loss was duly made by plaintiff against defendant, and defendant denied liability upon the ground that by the lease agreement, plaintiff had released Bell from all responsibility for damage to the aircraft while in flight and had, thus, defeated defendant's right of subrogation to plaintiff's rights against Bell.

Plaintiff contended in the trial court and here contends that, under the provisions of the clause of paragraph 9 of the lease agreement, which we have quoted and emphasized above, it did not release Bell from liability for any damage caused the plane by reason of Bell's negligence and that, therefore, defendant's right to subrogate was not defeated. At the trial, all pertinent facts were stipulated to and the sole question submitted to the trial court was the interpretation of the lease agreement and its effect upon defendant's liability under the policy. This question was submitted as a matter of law, without, as we have heretofore said, the introduction of any extrinsic evidence as to what the parties meant by what they said.

The trial court agreed with respondent's construction of the lease contract and rendered judgment against the defendants.

The question as to what construction should be placed upon the contract being solely one of law, this court is not bound by the construction placed on it by the trial court. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825] ; *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257].)

In *Meyer* v. *State Board of Equalization, supra,* the Supreme Court said: "The sole evidence being the written documents without qualifying testimony, their legal effect is a question of law, and the interpretation given to them by the trial court is not binding upon appeal. In the absence of extrinsic evidence, 'there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law.' "

The lease contract in question here must, like every other contract, be interpreted so as to give effect to the intention of the parties as it existed at the time of the contract, so far as the same is ascertainable. (Civ. Code, § 1636.) The language of the contract governs its interpretation if the

language is clear. (Civ. Code, § 1638.) In determining the meaning of the contract, the court may take into consideration the circumstances under which it was made and the matter to which it relates. (Civ. Code, § 1647.) To determine what the parties meant by one clause of the contract, the whole contract must be examined, and other clauses of the contract may be considered in interpreting the meaning of the one in question. (Civ. Code, § 1641.)

■ It has been stated " 'that where the parties fail to refer expressly to negligence in their contract such failure evidences the parties' intention not to provide for indemnity for the indemnitee's negligent acts.' " (*Vinnell Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411, 415 [340 P.2d 604].) ■ The rule just stated, however, does not preclude the court from examining a contract before it to determine its meaning and if, from the contract and the legal relationship existing between the parties, it appears that it was the intent of the parties by agreement that one party should be released from damage caused by his negligence, then the agreement must be so construed. (*Harvey Machine Co.* v. *Hatzel & Buehler, Inc.*, 54 Cal.2d 445, 448, 449 [6 Cal.Rptr. 284, 353 P.2d 924].)

■ It is a cardinal rule in interpretation of contracts that the contract is to be taken by its four corners and so construed as to give effect to every part of it, if possible. (Civ. Code, § 1641; *French* v. *Farmer,* 178 Cal. 218, 221 [172 P. 1102]; *Savage* v. *Smith,* 170 Cal. 472, 479 [150 P. 353]; *Welch* v. *British American etc. Co.,* 148 Cal. 223, 227 [82 P. 964, 113 Am.St.Rep. 223, 7 Ann.Cas. 396].) In the present case, if the clause of the contract which released Bell from responsibility for damage to the aircraft can only be effective if the contract is construed as relieving Bell from damage occurring to the aircraft while in flight through Bell's negligence, then, under the rules of construction we have set forth, the contract must be given that construction. On the other hand, if there is another basis upon which Bell's responsibility for damage to the airplane while in flight might also be predicated, then the contract must be interpreted as relieving it from such responsibility, and not interpreted as relieving it of responsibility from its own negligence.

■ In the absence of a contractual provision to the contrary, under a bailment for the mutual benefit of the parties such as that here, the bailee's only obligation is to use ordinary care for the "preservation in safety and in good

condition'' of the bailed property, and to repair all damage thereto occasioned by his want of ordinary care. He is not responsible for damage caused by the negligence or other wrongful acts of third persons who are not his agents or employees, or acting as independent contractors of his choice in carrying out the work that he had contracted to perform upon the bailed property. (Civ. Code, §§ 1928, 1929.) This responsibility of the bailee can be diminished or increased by contract. (*Kaye* v. *M'Divani*, 6 Cal.App.2d 132, 134-135 [44 P.2d 371]; Civ. Code, § 3268.)

 We have not been cited to any authorities, nor has our research discovered any, in which it has been held that where a subbailment is made with the consent of the bailor, the original bailee is reponsible to the bailor if the property be damaged by the negligence of the subbailee. There can be no doubt that it was the intent of the parties to the contract in question here that Bell should let the aircraft to other persons and in fact that was the sole object of the contract and only if that object were accomplished could plaintiff receive any benefit under the contract, for the only remuneration which it was entitled to receive was on the basis of $16 per revenue hour and it is clear that the revenue hours were the hours which the plane was used by subbailees and for which Bell received the rental of $22 per hour specified in the contract.

The contract here expressly placed two obligations upon Bell. It undertook, at its own expense, to repair any damage to the aircraft caused by its negligence while the aircraft was *on the ground*. It obligated itself to let the aircraft only to qualified pilots whom it had checked out before their first flight in the plane. It is not reasonable to suppose that the parties intended by the clause in question here to release Bell from the obligations which by the contract it had expressly assumed. To so construe the contract would be to render those portions thereof by which it assumed these obligations meaningless and of no effect.

 Provisions of a contract of the character we have before us for consideration here will not be interpreted as expressing the intention of the parties that one shall be released from responsibility for the violation of a duty which by the same contract he has expressly undertaken. (*Basin Oil Co.* v. *Baash-Ross Tool Co.*, 125 Cal.App.2d 578 [271 P.2d 122]; *Sproul* v. *Cuddy*, 121 Cal.App.2d 197 [263 P.2d 92].)

This leaves us with but one basis for Bell's responsibility to which the clause in question could apply and it is only if the contract be construed as releasing Bell from damage to the airplane caused by its negligence while the plane was *in flight* that this clause can be given any meaning or effect.

Other clauses of the contract clearly indicate that it was the intent of the parties to release Bell from any damage to the aircraft while in flight even though occasioned by Bell's negligence. By paragraph 3 of the lease agreement it is provided that Bell should be responsible for damage to the aircraft caused by its negligence in handling the aircraft while *on the ground*. This clearly demonstrates that the parties had the responsibility for negligence of Bell in mind when the contract was made and intended that its responsibility for such negligence should be limited to acts of negligence occurring while the aircraft was on the ground, thus removing such acts of negligence from the general release clause which we are interpreting here.

Further, the clause that Bell should not be responsible for damage to said aircraft is coupled with the statement that it would not carry "Hull" insurance, thus evidencing the intent of the parties to release Bell from the obligations against which it could have indemnified itself by a contract of hull insurance.

The conclusions we have reached are not in conflict with nor inconsistent with the decisions of the Supreme Court and of the district courts of appeal upon which plaintiff relies.

The first case cited by respondent is *Pacific Indem. Co.* v. *California Electric Works, Ltd.*, 29 Cal.App.2d 260 [84 P.2d 313]. In the cited case the court had before it a contract by which a corporation had contracted to do a small portion of the work upon the building being erected by the Standard Oil Company. It purported to "indemnify and save . . . harmless" the Standard Oil Company from any and all loss, damage or liability resulting directly or indirectly from the performance of its contract. The agreement did not expressly include loss, liability or claims arising from Standard's negligence. One of the indemnitor's employees was injured in the course of the work. He brought suit, asserting negligence on the part of Standard and obtained judgment. Standard's public liability insurer, having paid this judgment,

sought under its right of subrogation to recover the amount paid by it from the contractor, relying upon the indemnity agreement. The trial court admitted parol evidence to explain what the parties intended and then held that it was not the intention of the parties to indemnify Standard against the claims of third persons for injuries caused by its negligence.

The appellate court held that it was not error to admit this evidence and "when the evidence was admitted, it [the contract] was legally susceptible of the interpretation placed upon it by the learned trial judge." [P. 275.] The distinction between that case and this is self-evident. Here the question is not one of fact but of law and here the contract would be meaningless were we to give it the interpretation respondent contends for.

The next case cited by respondent is *Basin Oil Co.* v. *Baash-Ross Tool Co., supra,* 125 Cal.App.2d 578. In the case cited, defendant had sold plaintiff certain suspension plugs to be used by plaintiff in the drilling of oil wells. On the invoices which were sent by the defendant to the plaintiff after the delivery of the goods was this language: "All goods and materials are carefully tested and inspected before leaving point of manufacture, but as it is impossible to always detect imperfections, the only guarantee that is given by us, or for which we are in any way liable, is to replace such goods as proved defective when used . . . . Under no circumstances are we responsible for any damages beyond the price of the goods. No damages . . . suffered or incurred by the customer in repairing or replacing defective goods *or occasioned by them, will be allowed.*" A number of the plugs sold proved defective with the result that very serious damage was done to plaintiff's wells.

It brought suit for recovery. Its complaint was in two counts; the first based upon breach of warranty, the second upon negligence in the manufacture of the plugs. In upholding the judgment for the plaintiff this court pointed out that there were two bases of liability asserted against the defendant, that the parties must have had these in mind when they entered into the contract; and that, examined in its entirety, it was patent that the limitation of liability expressed in the contract did not go any further to limit the defendant's liability for breach of warranty. We further held that by the language of the contract they had expressly agreed to use reasonable care and that the contract could not be interpreted

as negating their express contract to use such care. We do not have here any double basis of probable liability against which either or both the parties might have contracted.

Plaintiff also relies strongly on *Sproul* v. *Cuddy,* 131 Cal. App.2d 85 [280 P.2d 158]. The decision is clearly not controlling here. There the contract which was relied upon read as follows (p. 89) : *"Licensor uses great care to have all of its equipment in good order and repair,* gives no warranty expressed or implied, as to condition, quality or any other matter of any equipment sent out, and will in no way be responsible for damages resulting from use thereof."

The court in holding the trial court erred in holding that, as a matter of law, the contract relieved the defendant from the responsibility for an accident caused by its own negligence said, in part, as follows (p. 95) :

"Here, as stated in the Basin Oil case, *supra,* page 596, Exhibit 'A' must be construed most strongly against defendants 'as being the product of its own draftsmanship and designed to whittle down the normal and ordinary rights of a customer. [Citation.]'

"Measured by the above criteria, it is at once apparent that *not only does Exhibit 'A' contain no reference to negligence,* nor any clear and explicit indication that defendants were attempting to relieve themselves of their duty of using due care with reference to their rental of the 'invalid walker,' *but the exact contrary appears from the opening asseveration that the licensor 'uses great care to have all its equipment in good order and repair.'* This statement, even if attenuated so as to relate to reasonable care rather than 'great care,' permeates the entire limitation notice and is the precondition for the operation of the comprehensive exculpatory declarations which follow. It qualifies and limits, at least to the extent there announced, the ensuing language. Such an interpretation is plainly dictated by the principles to which we have hitherto adverted. It seems also to give all the language used a harmonious construction and *avoids perverting the notice into nothing more than a semantic trap for the unwary."*

In the present case the factual situation is entirely different. There is not present here any positive assertion or commitment on the part of the lessor that he would exercise due care in relation to the operation of the aircraft while in flight and the contract here is not repugnant to any other portion of the contract but is consistent with it.

*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* 52 Cal.2d 411, is also distinguishable on its facts. In that case the plaintiff had entered into a contract with Los Angeles Flood Control District for the construction of a storm drain, a portion of which was lodged beneath the surface of the defendant's railway yard. The defendant granted the plaintiff a license to enter onto defendant's premises in carrying out his contract with the flood control district. The contract granting this license contained the following clause (p. 414): ''Contractor hereby releases and agrees to indemnify and save Railroad harmless from and against any and all injuries to and deaths of persons, claims, demands, cost, loss, damage and liability, howsoever same may be caused, resulting directly or indirectly from the performance of any or all work to be done upon the property . . . also from all injuries to and deaths of persons, claims, demands, cost, loss, damage and liability, howsoever same may be caused either directly or indirectly, made or suffered by said Contractor, Contractor's agents, employes and subcontractors . . . while engaged in the performance of said work.'' During the performance of the work, due to the negligence of the railway company's employees, the property of the licensee and indemnitor was damaged.

The indemnitor brought suit to recover its damages and defendant pleaded the contract of indemnification, which we have heretofore set forth, as a defense. The defense was overruled by the trial court. On the appeal the judgment of the trial court was affirmed, the Supreme Court, applying the rule of strict construction we have heretofore noted, held that under the circumstances the failure to expressly refer to the indemnitee's own negligence in the contract of indemnity evidenced the intention of the parties not to provide for indemnity against such negligent acts. In arriving at its decision affirming the judgment the court further said (p. 416): ''It is also contended that unless the clause is construed to protect the defendant from claims of damage caused by its own negligence, such clause has no practical meaning of benefit to the defendant. But such is not the case. One of the primary purposes of the clause was obviously to protect defendant against 'liability' to third parties, as well as the 'cost' of litigation, resulting from plaintiff's negligent acts or the negligent acts of plaintiff's subcontractors in the performance of the construction work, regardless of

whether such third parties might further claim, successfully or unsuccessfully, that defendant had also been negligent. Thus the clause has a definite practical meaning of benefit to the defendant, and we find no justification for reading into it any agreement by the parties to indemnify the defendant against damage to its own property or the property of others caused solely by its own negligence.''

In the case at bar, we are not concerned with that portion of the lease agreement by which Bell was indemnified against the claims of third persons, but only with that portion of the contract which relieved it from its duty to use ordinary care for the safety of the bailed property. As we have heretofore pointed out, the portion of the contract we are here concerned with is rendered meaningless unless it be construed as relieving Bell from the only duty breach of which would have rendered it responsible, the duty to exercise ordinary care.

That the Supreme Court in the Vinnell case did not intend to substitute for all other rules governing the interpretation of contracts of this character the rule applied by it in that case is made evident by its decision in the *Harvey Machine Co.* v. *Hatzel & Buehler, Inc., supra,* 54 Cal.2d 445, case. There the Supreme Court had before it an appeal from a judgment in an action for declaratory relief which interpreted a contract of indemnity as relieving the plaintiff Harvey Machine Company, Inc. (the indemnitee) from its own negligence. The contract under consideration by the court did not refer expressly to the indemnitee's negligence. In affirming the judgment the Supreme Court, commenting upon the Vinnell case, stated in part, as follows (p. 449) : ''In view of the distinctions hereinbefore drawn, the present decision is not inconsistent with the views expressed in the opinion in the Vinnell case, *supra.* . . . It was stated therein, and the decision turned on the holding, that 'courts have consistently adopted the position that indemnification claims are to be strictly construed against the indemnitee in cases involving affirmative acts of negligence on his part. (Citations.)' *Throughout the opinion, however, it is manifest that it is the intent of the parties which the court seeks to ascertain and make effective.''*

Plaintiff, having by contract released Bell from any damage to the plane while in flight even though caused by Bell's negligence, could not place any claim against Bell. Unquestionably, defendant here, as the subrogee of plaintiff,

could have no rights that plaintiff did not have and, therefore, could not maintain an action against Bell for the damage that it caused. In other words, the defendant-insurer merely stands in the shoes of Bell and has no greater rights against a third person than it has. (*Hartford Fire Ins. Co.* v. *Chicago, M. & St. P. Ry. Co.,* 70 F. 201 [17 C.C.A. 62, 30 L.R.A. 193], affm. in 175 U.S. 91 [20 S.Ct. 33, 44 L.Ed. 84]; *United States Fire Ins. Co.* v. *Phil-Mar Corporation,* 166 Ohio St. 85 [139 N.E.2d 330]; *United States Fire Ins. Co.* v. *Paramount Fur Serv., Inc.,* 168 Ohio St. 431 [156 N.E.2d 121]; *Mitchell* v. *Holmes,* 9 Cal.App.2d 461 [50 P.2d 473]; *Downs Farmers' Warehouse Ass'n* v. *Pioneer M. Ins. Ass'n,* 41 Wash. 372 [83 P. 423]; *Soper* v. *First Security Insurance Co. of America,* 148 A.2d 580; *Frederick* v. *Great Northern Ry. Co.,* 307 Wis. 234 [240 N.W. 387, 391, 80 A.L.R. 984]; 6 Appleman, Insurance Law and Practice, §§ 4092, 4093.)

Judgment reversed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied November 17, 1960, and the following opinion was then rendered:

THE COURT.—In its petition for rehearing respondent asserts that, assuming the correctness of our decision that the lease agreement entered into by respondent with Bell Air Service released Bell from any liability for damage to the aircraft by reason of Bell's negligence, respondent was nevertheless entitled to judgment against appellant because there was no evidence that respondent had any rights against Bell to which appellant would have been subrogated except for the provisions against liability in the agreement.

This contention is raised for the first time in the petition for rehearing. The point was not advanced in respondent's briefs on the appeal nor was it advanced in the trial court. To the contrary, the entire matter was submitted to the trial court to be decided by it as a matter of law dependent on the interpretation placed by it upon the lease agreement.

Respondent's petition for a hearing by the Supreme Court was denied December 14, 1960.