PHŒNIX INSURANCE COMPANY, Respondent, *v.* WILLIAM H. PARSONS, Appellant.

The firm of P. & L. held an open policy issued by plaintiff, consisting of a cargo policy and annexed thereto a freight policy. By the cargo policy the insurance was "on cargo, freight and advances." It contained a clause to the effect that "the freight and advances insured under this policy are subject to the terms and conditions of freight policy attached." *Held,* that the meaning of this clause was not that the freight policy should control alone as to insurance on advances, but that to the terms and conditions of the cargo policy was to be added such of those contained in the freight policy as were pertinent and might concern the risk insured.

The "cargo policy" contained a clause to the effect that in case of any agreement by the insured whereby they relinquished any right of recovery against others, which in case of payment of loss by plaintiff would belong to it but for the agreement, it would not be bound to pay the loss. P. & L. effected insurance under the open policy for advances made to the captain of a vessel named for a voyage specified; before this they had written to the owners of the vessel that its captain had drawn upon them and asked whether the owners would remit the amount or would have them advance it. P. & L. after the insurance received an answer from the owners asking them to insure the advances if it had not already been done, so that in case of loss the owners would not be called upon for reimbursement. P. & L. replied that they had "covered the amount by insurance." A loss having occurred plaintiff, without knowledge of the correspondence between P. & L. and the owners, paid that firm the amount of the advances. In an action to recover back the same *held,* that said clause applied to the insurance in question; that the condition was broken, as the reply of P. & L. was an advice to the owners that their request as to insurance was complied with, and so the insurance became one for the owners' benefit, and P. & L. were estopped from asserting any claim against the owners for the advances; and, therefore, plaintiff was entitled to recover; that it was not material that the owners' letter of instruction was received after the insurance.

The amount of the insurance was $1,500, the sum advanced was $1,125. P. & L.'s claim against the owners was for $1,570; this included commissions of $341.63 for procuring a charter for the vessel. Plaintiff, with knowledge that the claim included the commissions, paid the whole amount of the insurance, taking an assignment of $1,500 of said claim; this the assignment stated was "for advances, commissions, etc." *Held,* that said commissions constituted no interest in or lien upon the vessel, and so as to this portion of their claim P. & L. had no insurable interest and it was not covered by the policy; that while the assignment did not

pass any claim against the owners arising out of the advances, as that had been released by the assured, it did pass that portion of the claim charged for commissions and this plaintiff could enforce against the owners, and so it was entitled to recover only the balance, after deducting the commissions from the claim.

Plaintiff introduced in evidence on the trial the record of a judgment of the U. S. District Court, in an action instituted by filing a libel against the vessel, to recover the amount paid to P. & L. By the judgment the libel was dismissed. *Held*, that the record was properly received in evidence, and that plaintiff was entitled to recover as damages, in addition to the advances, the amount of costs paid by it in that action.

(Argued October 20, 1891; decided December 1, 1891.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made March 2, 1891, which modified, and affirmed as modified, a judgment in favor of plaintiff, entered upon a verdict directed by the court.

This action was originally brought against the individual members of the firm of Parsons & Loud, shipping and commission merchants in New York city. Loud having died pending the litigation, the action was continued against Parsons as survivor.

Said firm procured in March, 1884, for the owners of the bark "Elliott Ritchie," a charter, upon which they claimed a commission of $341.63. Subsequently, on March 25, 1884, they accepted and paid a draft by the captain at Brunswick, Ga., for $1,125, expenses incurred for the vessel. At the time, defendants held an open policy of insurance, issued by the plaintiff company, consisting of a cargo policy, to which was annexed, in a separate sheet, a freight policy. By the cargo policy the plaintiff made insurance and caused defendant to be insured "on cargo freight and advances." It also contained a clause that: "It is understood that freight and advances insured under this policy are subject to the terms and conditions of freight policy attached hereto." The cargo policy also contained the following clause: "In case of any agreement or act, past or future, by the insured, whereby any right of recovery of the insured against any persons or corpora-

tions is released or lost, which would on acceptance of abandonment or payment of loss by this company belong to this company but for such agreement or act; or in case this insurance is made for the benefit of any carrier or bailee of the property insured other than the person named as insurer, the company shall not be bound to pay any loss, but its right to retain or recover the premium shall not be affected." On March 31, 1884, the defendants effected insurance, under their open policy, for the sum of $1,500, " on advances on board the bark ' Elliott Ritchie' at and from Brunswick, Ga., to Buenos Ayres."

On March 27, 1884, the defendants had written to the owners that the captain had drawn upon them and requested advice whether the owners would remit the amount, or would have defendants advance it. Under date of April 1, 1884, the Boston owners replied to that letter and instructed defendants, in the following language, to " please get the advances insured, if you have not already done so, so that in case of loss you will not call upon the owners for the advances." On April second defendants acknowleged the receipt of the Boston letter and say : " We have covered the amount by insurance out only to Buenos Ayres."

The bark was lost upon the voyage, by perils insured against, and in August, 1884, the plantiff paid to the defendants the amount of their insurance of $1,500, taking from them an assignment of $1,500 of their " claim of $1,570, which we have against bark ' Elliott Ritchie ' and owners for advances, commissions, etc., etc." Defendants also assigned to plaintiff, by indorsement upon the captain's draft for $1,125, all claim on account thereof " in consideration of the amount insured as advances on the vessel being paid." The assignment was made upon the insistance of the company and their refusal to pay otherwise. Subsequently the plaintiff company sued the owners in the United States District Court at Boston to recover the amount paid to the defendants in New York, alleging the assignment of the claim against the owners. The trial was upon an agreed statement of the facts, and, after hearing, the libel was dismissed. This action was then brought to recover

back from the defendants the $1,500 paid to them and the disbursements in the Boston litigation. At the Circuit a verdict was directed for the plaintiff. Upon an appeal from the judgment thereupon entered the General Term modified it by deducting from the recovery the items of sums paid for counsel fees and for copying in the Boston suit, leaving in only the costs of that suit.

*William W. Goodrich* for appellant. The defendants objected to the introduction of the letters of April first and April second, on the ground that they were written subsequently to the making of the insurance, and also asked the court to submit to the jury the question whether the defendants extinguished or agreed to extinguish their claim against the owners. This was a question of fact, and the refusal to submit it was error. (McArthur on Mar. Ins. 149.) It was error to admit the testimony of Mr. Russell, the counsel for the plaintiff in the Boston action, as to the amount of their bill for professional services in that suit. The plaintiff is not entitled to recover such amount without proof of the *bona fides* of that action. (Sedg. on Dam. 292.)

*George A. Black* for respondent. The agreement between Parsons & Loud and N. Gibson & Co., agents of the owners of the " Elliott Ritchie," deprived the plaintiff of any right of recovery against the owners, upon payment of the loss, and the debt being satisfied nothing passed by the formal assignment by Parsons & Loud to the plaintiff. (*P. Ins. Co.* v. *Chadbourne*, 31 Fed. Rep. 300.) Parsons & Loud were bound to disclose to the plaintiff at the time of collecting the insurance the fact that they had relinquished their claim against the owners of the vessel. (*Tate* v. *Hyslop*, L. R. [15 Q. B. Div.] 368.) The claim that the letter of April 1, 1884, from N. Gibson & Co. was not written until after the insurance was effected will not avail the defendant. (*A. Ins. Co.* v. *Storrow*, 5 Paige, 300 ; *G. W. Ins. Co.* v. *Thuring*, 13 Wall. 672.) Every person insured must have an interest in the insured

property, otherwise the contract would be a mere wager. (1 Arnold on Mar. Ins. 3; *Williams* v. *Ins. Co.*, 9 How. Pr. 365.) The insurance on advances contemplates the existence of a debt creating a maritime lien in favor of the creditor, and it is this lien which is insured. (*Reed* v. *M. S. Ins. Co.*, 3 Sandf. 54.) Upon the payment of the loss to the assured, the insurer becomes subrogated to all the rights which the assured had, including the claim against the debtor, whether the right to such subrogation be derived from the implication of law or from the express terms of the contract, and any act of the assured which discharges or diminishes the rights of the insurer to such subrogation, is a complete or *pro tanto* discharge of the liability of the insurer. (Phillips on Ins. § 1712; 2 Arnold on Ins. [4th ed.] 863; 17 How. Pr. 155; *Castellain* v. *Preston*, L. R. [11 Q. B. Div.] 380.) The claim against the owner of the bark was, by implication of law, to be transferred to the insurance company upon the payment of such a loss, and when they demanded an assignment of such claim, and refused to pay without it, they were standing on their exact legal rights, and that had they then known that the assured had, by his conduct and transactions with the owners of the bark, discharged the liability of the owners of the vessel, the insurance company would have been justified in refusing to pay. (*A. M. Ins. Co.* v. *Storrow*, 5 Paige, 285; *E. F. Ins. Co.* v. *Tyler*, 16 Wend. 398; 2 Phillips on Ins. 282.) It is the defendant's contention that the clause providing that any act of the insured releasing any right of recovery, which would otherwise belong to the insurer, should invalidate the policy, being found in the cargo policy only, does not apply to insurance on advances, and that nothing except what can be found in the freight policy attached to the cargo policy can affect the question. This is untenable. (*Foster* v. *Van Reed*, 70 N. Y. 19; *G. M. Co.* v. *Allen*, 53 id. 515.) There was an implied warranty arising out of the assignment by the defendants that the claim assigned was a valid claim to which the defendants had a title, and that said claim had not been satisfied by their act. (*Ledwith* v. *McKim*, 53 N. Y. 307; *Ross* v.

*Terry,* 63 id. 613.)   The judgment record in the Boston suit was evidence of the fact of the judgment and of the issues then tried.   ( *Waldo* v. *Long,* 7 Johns. 173 ; *F. N. Bank* v. *F. N. Bank,* 89 N. Y. 417 ; *F. & M. Bank* v. *E. R. Co.,* 72 id. 195.)   The complaint states a cause of action upon contract, and any allegations thereof as to concealment and false representations may be treated as surplusage.   ( *Graves* v. *Waite,* 59 N. Y. 156.)   Defendants' request to submit to the jury the question whether the defendants had released the owners of the vessel, was properly refused.   ( *Dwight* v. *G. Ins. Co.,* 103 N. Y. 341 ; *Brady* v. *Cassidy,* 104 id. 155 ; *T. G. C. Co.* v. *Smith,* 110 id. 87.)   Plaintiff is entitled to recover the actual costs of the Boston suit.   ( *Randall* v. *Trimmon,* 37 Eng. L. & Eq. 275 ; *Pennell* v. *Woodburn,* 17 C. & P. 117 ; *Blaisdell* v. *Babcock,* 1 Johns. 517 ; *Bennett* v. *Jenkins,* 13 id. 50 ; *Goodwin* v. *Francis,* L. R. [5 C. A.] 306.)

Gray, J.   Upon these facts, two of the questions which arise may be briefly disposed of.   In the first place, I entertain no doubt concerning the effect of the clause in the so-called cargo policy, which subjects freight and advances insured thereunder " to the terms and conditions of the freight policy attached thereto."   The insurance of the defendants' advances was effected in or by the instrument called the cargo policy. It so reads and it would be straining after construction to import into the language of the added clause referred to a meaning that the freight policy controlled alone, as to the terms and conditions of that insurance.   The insertion of the clause must be taken to mean, naturally, that to the terms and conditions of the cargo policy, such are added of the annexed freight policy as were pertinent and might concern the risk. The importance given to the clause grows out of the defendants' effort to avoid the effect of the condition of the cargo policy against any past or future action of the assured, whereby the right of recovery of the assured against the owners had been, or might be, released or lost.   The value of that condition in the contract of insurance to the insurer was in the

warranty or agreement of the assured that the right of subrogation of the insurer had not been and would not be released, or lost, by any action of the assured. Nothing in the language of the clause we are at present considering imported an exception of the terms of the cargo policy from the contract of insurance.

In the next place, the condition in this cargo policy, relating to any release or loss of the right of recovery against the owners, was clearly broken by the defendants. When, after acceptance of the captain's draft for disbursements upon the bark, the defendants effected the insurance for their advances with the plaintiff, they were without any instructions from the owners. Those instructions came a day or two afterwards, in the letter of April first, and requested the defendants to insure their advances, so that in case of loss they would not call upon the owners for reimbursement. They replied that they had "covered the amount by insurance out only to Buenos Ayres." This was a plain advice to the owners that, to that extent of voyage, their request as to insurance had been complied with. The result was that the insurance effected became one for the owners' benefit, and, in case of the loss of the bark, any moneys received from the insurer would go in discharge of the indebtedness of the owners; or if none were recoverable from the insurer, for any cause attributable to the defendants or not, the claim against the owners was, nevertheless, gone. They were thenceforth estopped from asserting any claim against the owners for advances to the bark; for the owners were justified in relying upon the defendants' representations in reply to their instructions to insure, and in believing their personal liability released and the claim transferred to the insurance. It is of no consequence that the insurance was effected before the owners wrote their letter of instruction. By the correspondence of the parties, the agreement was established that the insurance should be for the owners' benefit and their personal liability released. Nor is it material that the defendants may not have realized the effect of their reply to the owners' letter of instruction. The question is, what had the owners in Boston

the right to believe and to act upon ?   As the right of the defendants to recover against the owners of the bark was lost by their own act, a material condition of the agreement to insure them was broken, and that brings us to the question of what effect the breach had upon the relative rights of the parties to that contract.

Unquestionably, had the insurer known of this violation of the condition of the contract by the defendants, it could have defended against the claim upon the policy.   As it was, the breach of the condition had operated to relieve the insurer from the obligation of its contract.   And here another question, which suggests itself, may be referred to, and that is that besides a defense to any liability upon the policy for indemnity as to advances, the insurer could have defended against a claim for the payment of so much of the amount of insurance as would not be included within the advances to the bark.   Of the $1,500, written under this policy, only the sum of $1,125 was actually for advances to the captain, and the balance, to make up the whole sum of $1,500, which was paid over under the arrangement between the parties, was composed of items of a commission for procuring a charter of the bark for the owners, of a commission on advances, of premium for insurance on the advances and interest on the aggregate of all the items.   The insurable interest of the defendants in the vessel, I suppose, might fairly extend so far as to include the commission for lending the money and interest on the money, but it could not extend to the claim for a commission for procuring a charter.   The law merchant has always given to the lenders of money, borrowed by the master of a vessel for its necessities, a maritime lien upon the vessel.   They have that security, as well as the liability of the owner, and their lien on the vessel constitutes an insurable interest.   (See Cowper Rep. 636; *Ins. Co.* v. *Baring,* 20 Wall. 159.)

But the commission claimed for procuring a charter for the vessel is a personal liability of the owner, and constitutes no interest in, or lien upon, the vessel, which could make it insurable.   Therefore, the policy of insurance here, not only by its

language, specified the defendants' advances as the subject of insurance, but the assured had no insurable interest in the vessel as to anything beyond what the term advances might reasonably include. That was the defendants' only interest at risk upon the voyage. The insurer's contract was to indemnify them against any loss in respect thereto, during the voyage, from the perils or sea risks specified. This plaintiff, therefore, could have defended against any claim for the $1,500 written under the policy.

How did the formal assignment by the defendants to plaintiff, with the indorsement over of the captain's draft, affect the situation? Obviously, no claim for the advances passed. Any personal claim for that against the owners had been released by the assured. It was not necessary, as the General Term below considered, that the right of the plaintiff to recover back the moneys paid upon the policy should rest upon any implied warranty in the defendants' assignment to it. Its cause of action was perfect, independently, for it made the payment in ignorance of the defendants' breach of the condition. And the force of that condition was quite as great in aid of a recovery back of the moneys, paid in ignorance of the fact that the defendants had forfeited or lost their right to the enforcement of the owners' personal liability, as it would have been to defend against a claim for payment, if the insurer had been made aware of the breach of the agreement.

The principle of the equitable right of the insurer to subrogation was discussed in the opinions delivered by the vice-chancellor and chancellor in the case of *Atlantic Mutual Ins. Co.* v. *Storrow* (1 Edw. Ch. 627, and 5 Paige, 294), and reference to them may be had. The insurer could not be deprived of that subrogation to the right of the assured, which was his in equity and the loss of which was especially secured against here, in the contract of insurance.

But I think the deed of assignment did have the effect to pass over to the plaintiff whatever claims the defendants had against the owners, growing out of the transactions disclosed here. For the $1,500, paid by the plaintiff for the assignment, it

must in fact have become the owner of such of the claims specified in the deed, as were still owing to the defendants. Such would be the commission for procuring a charter of the vessel. That assignment read that it "assigned $1,500, of our claim of $1,570.47, which we have against bark * * * and owners, for advances, commissions, etc." Contemporaneously, the captain's draft was assigned over by indorsement, and that contained the information that the sum of $1,125 represented what had been advanced for disbursements upon the bark. The plaintiff, if it did not actually know, was chargeable with the knowledge, or was put upon its inquiry, that defendants claimed against the owners for other amounts than for mere advances. Of course, the plaintiff supposed it was acquiring the right to all the claims against the owners and, undoubtedly, the object of the assignment was gone with the loss of the claim upon the owners for reimbursement of the advances; but how can it be said that the assignment was ineffectual as to the balance of the claims? They became the plaintiff's property by purchase and I can see no reason why the assignment was not enforceable *pro tanto*.

There was no error in admitting the record of the United States District Court, in the action between this plaintiff and the owners of the bark. It proved a judgment, rendered by a court having jurisdiction of the subject-matter and of the parties, dismissing the libel, filed by the plaintiff here against the owners of the bark, to recover the advances which the libellant had paid and which it supposed it had acquired the right to recover from the original debtor. The record there showed a case upon the same material facts as here and it was competent evidence of the fact of a judgment dismissing the claim, which the assignment purported to transfer to libellant. (*First Natl. Bank* v. *Fourth Natl. Bank*, 89 N. Y. 412.)

The reduction by the General Term of the judgment, by the disallowance of the counsel fees in the Boston suit, is not complained of here. Had these defendants been notified of the suit, the question would have been different and they might have been held to pay that item of damage. As it is, I some-

what doubt that any notice was due them; for the plaintiff was not defending an action, but was suing as the holder of a claim, by the right of subrogation and by virtue of an assignment. However, the reduction has not been made the subject of an appeal. But as to the actual costs, which were paid in that action, I think it right that the plaintiff should recover them. The suit certainly was the natural sequel, or consequence, of the defendants' act.

No other point of the appellants demands our consideration and I advise that the judgment, as entered upon the order of the General Term, should be further modified, by deducting from the amount of the original judgment herein, a sum which shall be equal to the difference between the amount of the verdict of $2,353.11 and an amount made up by adding together the sum of $1,125, advanced on the captain's draft, the commission thereon of two and one-half per cent, and interest on these two sums at six per cent from March 25, 1884, to the day of the trial, and the sum of $36.65 costs of the Boston suit, with interest thereon at six per cent, from October 1, 1889, to the date of trial, and that the judgment as so modified be affirmed, but without costs to either party as against the other.

All concur.

Judgment accordingly.