MAXWELL TEXTILE COMPANY, INC., Appellant, *v.* THE GLOBE AND RUTGERS FIRE INSURANCE COMPANY OF THE CITY OF NEW YORK, INC., Respondent.*

First Department, February 8, 1929.

* Affg. 132 Misc. 679; affd., 251 N. Y. ——.

*Alfred B. Nathan* of counsel [*Maxwell Hyman*, attorney], for the appellant.

*Martin A. Schenck* of counsel [*William J. Carr* with him on the brief; *Davies, Auerbach & Cornell*, attorneys], for the respondent.

O'MALLEY, J. Plaintiff, as assignee, seeks recovery on a policy of insurance issued by the defendant. The policy was for the sum of $5,000 and covered shipments made by the Maxwell Silk Mills, Inc., plaintiff's assignor, against loss by fire on shipments in transit while in the possession of a carrier. The loss covered by the policy is conceded, but the defendant has avoided liability upon a defense of breach of warranty and breach of covenant by the assured whereby the defendant claims it has lost its right of subrogation against the carrier.

The policy required the payment of an original premium of fifty dollars, and an additional premium based upon the value of shipments to be made. To this end it was provided that the shipments were to be " Valued at invoice less discounts on date of shipment, or cash value when not invoiced."

There was contained in the policy the following warranty: " Warranted by the assured that he has not or will not enter in any special agreement with the carriers releasing them from their common law or statutory liability."

In addition to the above warranty there was also contained the following clause: " In case of any agreement by the Assured, prior or subsequent hereto, whereby any right of recovery of the Assured for loss of or damage to any property insured hereunder, against any person or corporation, is released, impaired or lost, which would on acceptance of abandonment or payment of loss by this Company, have inured to its bentefi, but for such agreement or act, this Company shall not be bound to pay any loss, but its right to retain or recover the premium shall not be affected."

Breach of the above warranty and covenant is asserted by the defendant in that the assured by undervaluing the two shipments involved in the loss made the special agreement prohibited, thereby releasing the carrier from liability.

While conceding the undervaluation, the plaintiff denies any

breach of warranty or covenant and asserts that under the terms of the policy undervaluation of shipments was permissible. In support of this contention reliance is had upon the following language contained in one clause of the policy: " It is understood and agreed that the assured may accept without prejudice to this insurance the ordinary Bills of Lading issued by carrier * * *."

Immediately following the above provision and as a part of the same clause there is a warranty made by the assured to the effect that the insurance shall not inure to the benefit of the carrier " by stipulation in bill of lading or otherwise, and any breach of this warranty, and any act or agreement by the assured, prior or subsequent hereto, whereby any carrier or party liable for, or on account of, loss of or damage to any property insured hereunder, is given the benefit of any insurance effected thereon, shall render this policy of insurance null and void."

The two shipments made at the same time through the same carrier were of an actual value of $5,100.18 and $3,706.32, respectively. One was valued at the sum of $390 and the other at the sum of $250 in the bills of lading issued by the carrier. It appears that these bills were the customary or ordinary form of contract of carriage used between the insured and the carrier corporation. They had a blank space for the declaration of value by the shipper and the face of each bill contained at the right thereof in bold face type the following: " NOTE. The company will not pay over $50 per shipment in case of loss, unless a greater value is declared and charges for such greater value paid." But the carrier agreed to " carry upon the terms and conditions printed on the back hereof, to which the shipper agrees, and as evidence thereof, accepts and signs the receipt."

The first of these conditions was: " 1. In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding fifty dollars for any shipment, unless a greater value is declared at the time of shipment, the shipper agrees that the Company shall not be liable in any event for more than fifty dollars for any shipment, unless a greater value is stated herein. Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as last above set out and that the liability of the Company shall in no event exceed such value."

The declared value of each shipment was inserted in the blank space on each bill of lading and in addition each bill was signed by the insured through its duly authorized agent.

When the policy is read as a whole, it is evident that the defendant was attempting to preserve to the fullest extent its right of subroga-

tion against the carrier and to guard itself against any special agreement on the part of the assured, whereby its right of action against the carrier might be released, impaired or lost. The contract must be construed so as to make of it a harmonious whole. To this end the specific prohibition against destroying or impairing the defendant's right of subrogation must be deemed an exception to words of general permission to accept ordinary bills of lading.

It is to be noted that there are other provisions in such ordinary bill restrictive of liability to which these general words of permission were intended to apply. Unless caused by its own negligence, the carrier was not to be liable for loss in certain contingencies; and in others, unless caused in whole or in part by its own negligence. In addition the carrier was protected against liability for loss or damage of any character unless claim in writing was made within a specified time, and unless actions on claims were commenced within ten months from date of shipment. Against such provisions the defendant had not protected itself when it agreed to permit the use of the ordinary bill of lading.

In this view of the case we are unable to agree with the dictum of the learned justice at Trial Term to the effect that had no value been written in by the assured, the policy would not have been avoided upon the facts before us. Undervaluation, whether by filling in the blank space provided for value, or by failing to declare value, and thus limiting such to the sum of fifty dollars, would be a bar to recovery. The prohibition was against making a special agreement. The manner of such making was immaterial.

It follows that the judgment should be affirmed, with costs.

DOWLING, P. J., and MERRELL, J., concur.

PROSKAUER, J. (dissenting). This action is brought to recover, under a "Transit Open Policy" issued by defendant to plaintiff's assignor, the value of a shipment of merchandise lost in transit. It was provided in the policy: "Warranted by the assured that he has not or will not enter into any special agreement with the carriers releasing them from their common law or statutory liability.

"It is understood and agreed that the assured may accept without prejudice to this insurance the ordinary Bills of Lading issued by carrier."

A further provision in the policy reads: "In case of any agreement by the Assured, prior or subsequent hereto, whereby any right of recovery of the Assured for loss of or damage to any property insured hereunder, against any person or corporation, is released, impaired or lost, which would on acceptance of abandonment or payment of loss by this Company, have inured to its benefit, but for such agreement or act, this Company shall not be bound to pay any loss."

The shipments in question were made under a bill of lading which contained the conventional clause that the carrier's liability was limited to fifty dollars, unless the shipper declared the consignment to be of greater value and paid an increased freight based upon this increased valuation. The shipper here did declare a value greater than fifty dollars, but much less than the actual worth of the shipments, and signed a form of receipt in which it agreed to the provisions limiting the carrier's liability.

It is clear that in the absence of the above-quoted provision of the policy giving to the shipper the right to accept the ordinary bills of lading issued by the carrier, it would have no right of recovery. It does not follow, however, that under the policy as issued it has thus forfeited its rights. By the terms of the policy " the assured may accept without prejudice to this insurance the ordinary Bills of Lading issued by carrier." The shipper, therefore, had the right without prejudice to the insurance to accept a bill of lading limiting the amount of the carrier's liability if that bill of lading was one of " the ordinary Bills of Lading issued by carrier." The evidence here discloses that the form of the bill of lading was one in common and ordinary use by the particular carrier, and in so far as the limitation of liability clause is concerned, the one which as a matter of common knowledge is employed almost universally in interstate shipments. It is to be noted that the clause giving to the assured the right to accept the ordinary bill of lading is followed immediately by a clause under which the assured warrants that the carrier shall not be subrogated to any rights against the insurance company. What was thus emphasized to the assured was that acceptance of the ordinary bill of lading should not be coupled with any act that gave the carrier any right against the insurer. A shipper reading this policy would not reasonably deduce from its terms that his acceptance of the ordinary bill of lading with the conventional limitation of liability clause would forfeit his right to insurance unless he did the further affirmative act of declaring actual value and paying increased rate.

In *Kidd* v. *Greenwich Ins. Co.* (35 Fed. 351) the plaintiff sued upon a policy which provided that any act " waiving or tending to defeat or decrease " any claim against the carrier " whether before or after the insurance " was to be a cancellation of the policy. WHEELER, J., writes: " This provision in the policy is not, however, that all liability of the carrier which might arise shall be insisted upon and created and not diminished from what it would be without special contract, but that the claim against the carrier, as it actually exists in favor of the assured [shipper], shall not be waived or diminished, and shall inure to the benefit of the insurer. The policy

does not provide that any liability of the carrier shall be perfected, but that, if one is perfected, it shall remain for the benefit of the insurer." And it was held that the fact that the stipulated valuation in the bill of lading was below the actual value of the merchandise shipped was not a breach of the warranty contained in the policy, that would defeat the shipper's rights under the policy.

If, therefore, the shipper had merely accepted this ordinary form of bill of lading without declaring any value upon the shipment, it would not have violated any of the terms of the policy. By making a declaration of insufficient value, it did nothing to prejudice the right of subrogation which the defendant might have had if the bill of lading had been accepted without such declaration. If it were the intention of the parties to throw upon the shipper the affirmative obligation of declaring the full value of every shipment and paying the increased freight thereon under penalty of loss of the benefit of its insurance policy, it would have been very easy to employ apt words to give unambiguous expression thereof. A shipper taking this policy from the insurance company was justified in believing that it could at all events safely take the ordinary form of bill of lading containing the limitation of liability clause in common use, and that what it could not safely do was to make any agreement which impaired the right the insurance company would have under that ordinary form of bill of lading. If the insurer meant that the shipper was in every case to declare the actual value and pay the increased freight thereon as a condition precedent to recovery on the policy, it should have said so.

I, therefore, vote for reversal of the judgment appealed from and for direction of a judgment in favor of the plaintiff.

MARTIN, J., concurs.

Judgment affirmed, with costs.