INSURANCE COMPANY OF NORTH AMERICA, Respondent, v. UNIVERSAL MORTGAGE CORPORATION OF WISCONSIN, Appellant.

*No. 75–821. Argued January 4, 1978.—Decided February 7, 1978.*
(Also reported in 262 N.W.2d 92.)

For the appellant there were briefs by *Ralph J. Ehlinger, Diane S. Diel* and *Hoyt, Greene & Meissner, S. C.* of Milwaukee, and oral argument by *Diane S. Diel.*

For the respondent there was a brief by *Howard B. Mitz* and *Belongia & Mitz, Associates* of Milwaukee, and oral argument by *Howard B. Mitz.*

HEFFERNAN, J.  The issue presented is whether the plaintiff insurance company has stated a claim upon

which relief can be granted against its insured for the recoupment of a payment previously made to its insured when the insured, after the issuance of the insurance policy, but before the physical loss of the property for which the indemnity had been paid, had executed a lease agreement with its landlord which exculpated the negligent landlord for any liability for an insured loss and thereby foreclosed the insurance company's right of subrogation against the landlord tortfeasor.

The insured's motion, pursuant to sec. 802.06 (2), Stats., to dismiss the complaint for failure to state a claim upon which relief can be granted, was denied by the trial court, and the insured appeals. We reverse and remand and direct that the complaint be dismissed.

The plaintiff, Insurance Company of North America, on June 15, 1970, entered into a contract of insurance to insure the contents of a building occupied by Universal Mortgage Corporation of Wisconsin and owned by Towne Realty, Inc.

On July 8, 1970, Universal Mortgage Corporation, as lessee of the premises, entered into a lease agreement with Towne Realty which, in parts pertinent to this cause of action, provided:

". . . that Landlord shall not be liable to Tenant for any such damage or injury, in any event, to the extent Tenant's insurance provides compensation therefor."

On February 19, 1971, cleaning personnel employed by the landlord negligently threw out with its waste paper certain valuable mortgage documents, and as a consequence Universal Mortgage sustained a loss in the amount of $5,151.86. Universal Mortgage made a claim on Insurance Company of North America, and on November 29, 1971, the insurance company paid the claim. Later the insurance company discovered that its insured, after the issuance of the insurance policy on the contents

of the building but before the physical loss of the valuable papers, had entered into a lease agreement, as set forth above, which exculpated the landlord, Towne Realty, Inc., from any liability. The insurance company in this action, which was brought against its own insured, Universal Mortgage Corporation, alleges that, by that lease, the insured waived the subrogation rights of the insurance company against the landlord and, accordingly, the insurance company was damaged in the amount of the loss which had previously been paid and which could not be recovered from the tortfeasor.

The trial judge denied the defendant's motion to dismiss without explanation. Accordingly, we do not have the benefit of the trial judge's rationale for his decision.

In defense of the trial judge's order, the plaintiff insurance company relies chiefly upon Paragraph 11 of the insurance policy, which provides:

"11. Subrogation: In the event of any payment under this policy the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights."

The essence then of the plaintiff's position is that the liability exculpation clause in the lease between Universal Mortgage and its landlord violated the subrogation clause of the insurance agreement and that, because payment for the loss was made to the insured on the assumption explicit in the policy that the insurance company would be subrogated to the rights of its insured against a tortfeasor, the insurer's obligation under the policy was terminated by the defendant's prior waiver of claim against the negligent landlord.

The argument counter to this posed by the defendant, Universal Mortgage Corporation, is in reliance upon the

express wording of the subrogation clause of the insurance policy. It particularly relies on the following words:

"In the event of any payment under this policy the Company shall be subrogated to all the Insured's rights of recovery therefor . . . . The insured shall do nothing *after loss* to prejudice such rights." (Emphasis supplied.)

Simply stated, then, the insured's position is that, at the time of payment, the insured, because of the prior exculpatory clause in the lease, had no right of recovery against the negligent landlord and Universal Mortgage did nothing after the loss (the discarding of the papers) to prejudice any rights of the insurance company. The exculpatory clause of the lease was entered into prior to the loss; and, hence, it is argued by Universal Mortgage that it indeed did nothing *after loss* to prejudice the rights of the insurance company.

It should be stated at the outset that the parties are in agreement that in the usual situation where an insurance company has been obliged to pay, and has paid, the loss pursuant to an insurance policy, upon payment of the loss it becomes subrogated to the rights of its insured against the wrongdoer.

It is also agreed by the parties that an exculpatory clause such as found in the lease between the insured Universal Mortgage Corporation and its landlord, Towne Realty, is valid. It further is expressly agreed that the pre-loss contractual-liability waiver entered into between Universal Mortgage and Towne Realty constitutes a defense to any subrogation action which might be undertaken by Insurance Company of North America against Towne Realty.

Thus, the only issue in the instant case is whether the insurance company, which was denied a subrogation claim against the landlord tortfeasor, can recover the sum it previously paid its own insured on the ground that the insured's execution of the waiver of its rights against the tortfeasor—and thereby the rights of the insurance company—constituted a breach of the conditions of insurance and afforded the insurer a policy defense.

On this appeal, for the first time, the insurance company appears to argue that the insured wilfully concealed a material fact or circumstance in respect to the insurance. It argues that the representations made at the time of proof of loss were fraudulent. There is, however, nothing to show that a claim of fraud was ever made prior to the filing of plaintiff's brief upon appeal. The record is to the contrary, for the complaint is totally lacking any claim of fraud. Nothing in the complaint can be construed, even by the most liberal construction, to present a claim for fraudulent concealment. The elements of a fraud claim are false representation, intent to defraud, and reliance upon the representation resulting in damage. *Goerke v. Vojvodich,* 67 Wis.2d 102, 226 N.W.2d 211 (1975). No allegations of this nature were made, or even hinted at, in the complaint. The allegation of fraud made for the first time on this appeal is beyond the purview of the appeal before the court.

It is agreed, however, that the conduct of the insured in entering into the lease after the issuance of the insurance policy had the effect of not only destroying its own right of recovery against the tortfeasor but also of nullifying the right of subrogation which its insurer would otherwise have had. The insurance company, therefore, claims that, because it made its payment to

the insured only under the mistaken belief that the insured had not destroyed its right of subrogation, it should be entitled to recover the payment mistakenly made.

The insured did not follow a prudent course of action. At best, by its conduct, it has incurred the onus of defending this present lawsuit and, at worst, the onus of forfeiting the insurance benefits previously paid.

Because the law in this respect is unsettled and varies from jurisdiction to jurisdiction, several authors have pointed out that it is highly imprudent for an insured to waive the subrogation rights of its insurer without obtaining the prior consent of the insurance company. *See* Friedman, *Landlords, Tenants and Fires—Insurer's Right of Subrogation,* 43 Cornell L.Q. 225 (1957); Mackaman, *Subrogation: A Landlord-Tenant Problem,* 4 Drake L. Rev. 79 (1955). These articles point out that endorsements to insurance policies which expressly authorize the insured to waive its rights against a third party prior to a loss are widely available. Clauses which expressly authorize the waiver of the type employed here are set forth in *Natell v. Henley,* 103 N.J. Super. 161, 246 A.2d 749 (App. Div. 1968); *Shaer Shoe Corp. v. Granite State Alarm, Inc.,* 110 N.H. 132, 262 A.2d 285 (1970); *Commerce & Industry Ins. Co. v. Orth,* 254 Or. 226, 458 P.2d 926 (1969); *New Hampshire Ins. Co. v. Fox Midwest Theatres, Inc.,* 203 Kan. 720, 457 P.2d 133 (1969). In the exercise of reasonable prudence Universal Mortgage should have obtained the express assent of its insurer.

At the other end of the spectrum, it was equally imprudent for the insurance company in the instant case to conclude that the subrogation clause incorporated in its policy, which referred explicitly to conduct by a tortfeasor *after loss,* would by general language afford it protection from a waiver prior to the physical loss

incurred. An explicit clause to protect the insurer's right to subrogation could have 'been included in the policy.

An example of an insurance policy which expressly prohibited waiver of rights prior to loss appears in *Phoenix Insurance Co. v. Parsons*, 129 N.Y. 86, 87–8, 29 N.E. 87 (1891). The clause therein provided:

"In case of any agreement or act, past or future, by the insured, whereby any right of recovery of the insured against any persons or corporations is released or lost, which would on acceptance of abandonment or payment of loss by this company belong to this company but for such agreement or act; or in case this insurance is made for the benefit of any carrier or bailee of the property insured other than the person named as insurer [insured], the company shall not be bound to pay any loss, but its right to retain or recover the premium shall not be affected."

A similar clause was also inserted in the policy considered in *Maxwell Textile Co. v. Globe & Rutgers Fire Ins. Co.*, 225 App. Div. 279, 232 N.Y.S. 586, *aff'd*, 251 N.Y. 535, 168 N.E. 417 (1929).

There is no plausible reason presented by the insurance company on this appeal why such an endorsement or clause could not have been inserted in the present policy had the insurance company wished to assure itself that there would be no waiver of its subrogation rights prior to a loss sustained by its insured. Thus, the clause with which we are principally concerned contains the sentence that the insured shall do nothing "after loss" to prejudice such rights. While Paragraph 13 states that the terms of this policy shall not be changed or waived, "except by endorsement issued to form a part of this policy," the policy contains no express statement with respect to the waiver of subrogation rights prior to loss.

We have frequently stated that no insurance policy should be rewritten by a court to bind an insurer to a risk which it did not contemplate and for which it has not been paid. *Wisconsin Builders, Inc. v. General Insurance Co.*, 65 Wis.2d 91, 103, 221 N.W.2d 832 (1974). In the instant case, however, it appears to us that the plaintiff, Insurance Company, would have us rewrite the policy to exonerate it from a risk which it contemplated and for which it has been paid. The most that can be said in favor of the insurance company's position is that the language upon which it relies is ambiguous or obscure. As *Wisconsin Builders, supra,* stated, however, any ambiguity or obscurity in the language must be construed against the insurance company which drafted the policy and any provision tending to limit the liability of the insurance company should be construed most strongly against the insurance company.

In addition, there are recognized equitable considerations which tend to favor the insured in this case. The insurance company either knew, or should have known, that its insured was a tenant in the building in which its place of business was located. This was acknowledged by counsel on oral argument. Despite this fact and despite the fact that exculpatory clauses are common in modern business leases, there was nothing to indicate that the insurance company made any inquiries in respect to the terms of any lease into which the insured might enter during the life of the policy.

Failure to make that inquiry has been considered an equitable factor favoring the insured in numerous cases. *Jackson Co. v. Boylston Mutual Ins. Co.*, 139 Mass. 508, 2 N.E. 103 (1885) ; *Pelzer Manufacturing Co. v. Sun Fire Office*, 36 S.C. 213, 15 S.E. 562 (1892) ; *Atlantic Mutual Ins. Co. v. Cooney*, 303 F.2d 253 (9th Cir. 1962).

At oral argument, counsel for the plaintiff asserted that subrogation rights were a substantial factor in actuarially calculating the rate to be charged. By implication, he argued that, therefore, where subrogation rights had been terminated by the action of the insured, the insurance company was assuming a risk for which it had not been paid. During oral argument the validity of this assumption was questioned by the court. Counsel failed to respond to the invitation of the court to furnish actuarial statistics to substantiate the claim that subrogation plays a major role in insurance rate-making.

A study referred to by Friedman in the Cornell Law Quarterly, *supra*, at 230, indicates that, at least in respect to fire insurance, subrogation plays no part in rate schedules and is a windfall to the insurer.

While we cannot conclude that subrogation rights have no effect in setting the rates applicable to insurance policies of the type before the court, it is clear that we have been furnished only with the speculations of counsel that the right of subrogation indeed constitutes a right so valuable that it materially affects rate schedules. We are not convinced that any equities inure to the insurance company on the basis of that argument.

The recent Minnesota case, *Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co.*, 291 Minn. 97, 189 N.W.2d 404 (1971), persuasively discussed the equitable issues above referred to. In that case the insured took out an all-risk insurance policy which expressly subrogated the insurance company to "all the Insured's rights" and provided that "The Insured shall do nothing after loss to prejudice such rights." (at 98) There, as in the instant case, after the effective date of the insurance but before the loss, the insured entered into a construction contract which had the effect of limiting the liability of the contractor with respect to a risk covered by the insured's policy.

That case differs from the instant one only in the fact that, in *Great Northern*, the insurance company refused to pay the loss because the insured, by its contract, had defeated its subrogation rights. The Minnesota court held, however, that, in the absence of a clause prohibiting the insured from entering into exculpatory contracts, the insured was not precluded from recovering on the policy.

The Minnesota court acknowledged that the argument of the insurance company was not totally without merit, but stated that the equities of the case favored the insured, because the insurance company by a policy provision could have prohibited any exculpatory contracts by its insured which would have defeated its right of subrogation. It also pointed out that the insured had paid to insure the very risk it suffered and had a right to recover when it incurred the risk that it insured against.

We find the rationale of the Minnesota court persuasive in the case before us.

A similar rationale was adopted by the Ninth Circuit in *Atlas Assurance Co., Ltd. v. Harper, Robinson Shipping Co.*, 508 F.2d 1381 (9th Cir. 1975). In that case the insured was a shipper who entered into an insurance contract prior to execution of an exculpatory contrary. The contract was found by the court to be commercially reasonable. It concluded that, if insurance coverage were to be excluded because of the insured's use of a commercially reasonable contract, the exclusion would have to be accomplished by the express language of the policy and not through resort to the insurance company's general right of subrogation.

There are, however, cases which support the position of the plaintiff in the instant case. In *Downs Farmers Warehouse Ass'n v. Pioneer Mutual Ins. Ass'n*, 41 Wash. 372, 83 P. 423 (1906), the court held that, when the

insured entered into an exculpatory contract with a railroad company which caused damage to grain, the insured had destroyed the valuable right of subrogation of the insurance company and that this conduct invalidated the policy with respect to the insured's loss resulting from the negligence of the railroad. The defendant in this case correctly points out that *Downs* relied in part on an earlier case which was expressly overruled in *Gerlach v. Grain Shippers Mutual Fire Ins. Assn,* 156 Iowa 333, 136 N.W. 691 (1912). Nevertheless, the *Downs* opinion is based on a rationale that is independent of the overruled case and, as such, it stands in opposition to *Great Northern* and *Atlas, supra.* We find it, however, less persuasive than either of those cases.

*Continental Manufacturing Corp. v. Underwriters at Lloyds London,* 185 Cal. App.2d 545, 8 Cal. Rptr. 276 (1960), relied upon by the plaintiff, assumes the answer to the question posed on this appeal. This is made clear in the opinion on motion for rehearing (185 Cal. App.2d 556, 9 Cal. Rptr. 115 (1960)), where the court made it apparent that the entire case had been submitted by stipulation to the trial court on the assumption that, if the contract exculpated the third party, there could be no recovery under the policy. That case, therefore, did not address the issue presented here. It is, accordingly, irrelevant.

At oral argument the plaintiff invited the court's attention to *Liberty Mutual Ins. Co. v. Altfillisch Construction Co.,* 70 Cal. App.3d 789, 139 Cal. Rptr. 91 (1977). This is a case which involved a lease subsequent to the insurance policy in which the insured, the lessor, agreed to obtain insurance for the lessee's operation of a rented scraper. The insured lessor billed its lessee a sum which purported to be a payment for the additional insurance. The insured lessor, however, never obtained

the additional insurance, pocketed the premium, and after loss attempted to collect from its own insurance carrier. The insurance company's refusal to pay was upheld by the court because the contract between the lessor and the lessee had the effect of estopping the lessor from recovering from the lessee; and, accordingly, the insurance company's subrogation rights were destroyed.

We point out that the claimant in *Liberty Mutual* came into court with no equities in its favor. It had clearly breached all standards of good faith in its dealings with its lessee and with its own insurance company. Nevertheless, the court did attempt to face up to the question posed in the case before us, *i.e.*, whether the explicit prohibition of acts after loss which would prejudice the insurer's right of subrogation supports the possible interpretation that acts before loss which prejudice such rights are permitted. The rather cavalier response of the California court to this contention was:

". . . that there is no such animal as a 'right of subrogation *before* loss.' Such a right remains inchoate before loss and only matures into a legal concept after a loss to the insured property occurs. Stated otherwise, it would be impossible to prejudice a right of subrogation before loss, because there is nothing yet in being to prejudice." (at 796)

We are not convinced by this *ipse dixit*, for its rationale is directly contrary to our holding in this case, which we have elaborated on above and which is agreed to by the parties, that an exculpatory contract entered into by an insured does indeed prejudice the rights of the insurer to subrogate and that prejudice, though inchoate, is nonetheless real and operative to deprive the insurer of any subrogation against the other contracting party from the time the exculpatory contract is executed. *Liberty Mutual*, of course, is not precedent

for this court, and we find its rationale weak and unpersuasive.

While there are other cases, both pro and con, we follow the Minnesota case of *Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co.*, because its facts are directly on point, and we find the rationale of Justice Rogosheske persuasive on factors that we find pertinent in the instant case.

The insurance policy in the instant case is ambiguous. While a strained construction of Paragraph 13 might result in a conclusion that any conduct of the insured which waived the insurer's right of subrogation would void the policy, yet there is specific reference in Paragraph 11 to conduct "after loss." Without further explanation in the policy itself, we can only conclude that this means after the physical loss of the property for which the insured makes claim, and accordingly it is controlling.

The insured herein did nothing after the physical loss to the prejudice of the insurer's right of subrogation. The act which prejudiced the insurer's claim preceded the physical loss.

While the insured, Universal Mortgage Corporation, acted imprudently in executing the exculpatory lease without obtaining the consent of the insurer, the Insurance Company of North America acted imprudently in its failure to insert in the policy of insurance an express prohibition, if such were its intent, against any conduct which would waive the right of the insured, and hence of the insurer, against a third person. Any ambiguity in an insurance policy must be construed against the insurance company which drafted it.

In light of the equities set forth above, and in light of the ambiguity of the policy, we conclude that Insurance Company of North America has not stated a

claim upon which relief can be granted. It has failed to show, although the facts in this complaint be given full credence, that anything in the policy or in the alleged conduct of the insured vitiated the insured's rights to be paid and to retain the money due it in indemnification of its loss. Accordingly, the complaint of the Insurance Company of North America must be dismissed for failure to state a claim. The cause is remanded to the trial court with directions to enter an order dismissing the complaint.

*By the Court.*—Order reversed and cause remanded with directions to dismiss the complaint.