BARKDULL, Judge.
The appellant (plaintiff in the trial court), who was in the import-expert business, received a quantity of wire coils from Japan which were delivered to the Port of Miami. The appellee, Harrington & Company, Inc., acted as its agent and stevedore. Upon the goods being unloaded they were stored in outside storage in a usual and customary place for such goods.[1] Thirty- *1239 five coils of the wire were to be transshipped to Venezuela so, to avoid payment of duty therein, they were placed in bonded storage. The outgoing carrier for this shipper was Transytur Line; Harrington was to act only as stevedore on this shipment.
While the wire was on bonded storage pending transshipment, the wrappings caught fire resulting in damage thereto. The appellant thereupon brought the instant suit against Harrington and Transy-tur, seeking to recover these damages. Pri- or to trial, Transytur and the appellant arrived at a settlement and the action against Transytur was voluntarily dismissed. The cause proceeded to trial against Harrington. Thereafter, pursuant to Harrington’s motions for directed verdict made at the close of the appellant’s case and at the close of all the evidence, the trial court entered the final judgment for Harrington which is the subject of this appeal.
The appellant’s cause of action is predicated upon the allegation that Harrington was bailee of the goods at the time of the fire. The record conclusively refutes this allegation and, therefore, Harrington was entitled to a directed verdict.
When goods are left on the Port of Miami in excess of the free time[2] accorded them by the Port, it is the responsibility of the agent for either the inbound or outbound carrier to collect the detention charges. The evidence in the instant action shows that after the purpose of the bailment [for which Harrington had received the goods inbound] terminated, the goods then became the responsibility of Transytur as the outbound shipper. In this connection, Harrington was the stevedore for loading the outbound goods but was not the agent for the outbound shipper. The evidence indicated that the detention charges while the goods were awaiting transshipment were the responsibility of Transytur.[3]
Harrington’s responsibility, as the bailee of the inbound goods, had terminated prior to the date of the loss. Transytur had the responsibility for collecting the detention charges as of the date of the loss and, therefore, it was the bailee of such goods at this time and responsible as such. ITT Consumer Services Corporation v. Travelers Indemnity Company, 256 So.2d 74 (Fla. 3d DCA 1971); Hollander v. Nolan Brown Motors, Inc., 272 So.2d 9 (Fla. 3d DCA 1973); Fruehauf Corporation v. Aetna Insurance Company, 336 So.2d 457 (Fla. 1st DCA 1976).
Therefore, the judgment appealed is hereby affirmed.
Affirmed.

. The owner of the goods picked up a substantial portion of the goods from the site where they were stored and made no objection to the fact that the goods were stored outside.

. See footnote [3],

. Albert Menacho, President of Transytur Line, Florida, testified as follows on cross-examination:
♦ * # * *
“Q Your company at the time of this shipment as well as today were the agents for the shipping company. Is that not correct?
“A Yes, sir.
“Q Does that cargo get to stay there without any charge for a certain period of time? “MR. WILLIAMS: Objection.
“THE COURT: Fourteen days.
^ * sfc * * *
“THE COURT: Overruled. Go ahead.
“Q [By Mr. Ralph] How many?
“A Fourteen days free including Saturday and Sunday.
“Q What would happen if the cargo is there more than that free time?
“A It is subject to demurrage.
“Q Who is that demurrage owed to?
“A To the seaport.
“Q Who collects that for the seaport?
“A The seaport.
“Q Who collect it?
“A On behalf of the seaport? The steamship company.
“Q In this case, it would be you, the agent for Transytur?
“A Yes, sir.”
* * * ij! * 5(8