650 So.2d 72 (1994)
MONROE SYSTEMS FOR BUSINESS, INC., Appellant,
v.
INTERTRANS CORPORATION, Appellee.
No. 93-1294.
District Court of Appeal of Florida, Third District.
December 28, 1994.
Rehearing Denied March 8, 1995.
*73 Rex B. Guthrie, Miami, for appellant.
Fertig and Gramling and Frank Gramling, Ft. Lauderdale, for appellee.
Before HUBBART, BASKIN and COPE, JJ.
COPE, Judge.
Monroe Systems for Business, Inc., appeals a directed verdict in defendant's favor on Monroe's claim for breach of bailment. The questions presented are (a) whether appellee Intertrans Corporation was the bailee of goods stored in a third party's customs-bonded warehouse, and (b) if so, whether Intertrans is vicariously liable for the negligence of the warehouse operator. On the facts presented here, we conclude that (a) Intertrans was not the bailee of the goods stored in the third-party's warehouse, and (b) even if Intertrans was the bailee, the well-established standard of care is a negligence standard. Since Intertrans was found by the jury not to have been negligent, the judgment is affirmed.

I
Monroe Systems for Business, Inc., plaintiff below, manufactures calculators and other electronic equipment. In 1987, Monroe decided to move its Latin American distribution center from Panama to Miami. Rather than station its own personnel in Miami, Monroe hired Intertrans, a freight forwarder, to serve as its Miami agent.
Monroe's calculators were made in the Far East and were brought to the Port of Miami by ship. The calculators were stored in warehouses until needed for shipment to Monroe's customers. When Monroe issued shipping instructions, Intertrans would arrange for the designated products to be withdrawn from storage and shipped as directed.
In order to resolve the present case it is necessary to examine more particularly what *74 Intertrans agreed to do and how it agreed to do it. This is so because the Monroe goods which arrived in Miami fell into two groups: (1) those products which were to be imported for domestic sale within the United States, and (2) those products which were to be held in a customs-bonded warehouse for later export to Latin America.
As to the first category of Monroe products  those imported for domestic sale within the United States  Intertrans' own warehouse was suitable for storage. Consequently it was agreed that Intertrans would pick up such shipments at the Port of Miami and store the goods at Intertrans' own facility.[1] While the goods were in the warehouse, Intertrans was clearly the bailee. Upon receipt of shipping instructions, Intertrans would withdraw the goods from its own warehouse and arrange shipping.
As to the second category of goods  those to be held in bond in Miami pending export to Latin America  the agreement was different. In order for Monroe to avoid having to pay United States customs duties, it was necessary for the to-be-exported goods to be held in a customs-bonded warehouse approved by the United States Customs Service.[2] Furthermore, transportation from the Port of Miami to the bonded warehouse could only be accomplished by using a customs-bonded carrier.[3] Similarly, when the in-bond goods were to be withdrawn from the bonded warehouse and exported, they could only be transported back to the Port of Miami by bonded carrier.
Intertrans informed Monroe that Intertrans did not have its own bonded warehouse, nor did Intertrans have bonded trucks.[4] Consequently, it was agreed that Intertrans would select a customs-bonded warehouse for storage of Monroe's in-bond goods. Intertrans was also to arrange for a bonded carrier to transport Monroe's in-bond goods to and from the bonded warehouse. Thus, under the agreement and operative statutes, Intertrans would never obtain physical custody of the in-bond goods because Intertrans could not legally do so.
In accordance with the parties' agreement, Intertrans selected a bonded warehouse operated by International Warehouse Distribution Corporation ("IWDC") for storage of Monroe's in-bond goods. IWDC took its instructions from Intertrans and submitted its bills to Intertrans. Intertrans in turn billed Monroe.
On September 3, 1988, an arsonist set a fire at one end of the IWDC warehouse.[5] The Monroe in-bond goods were stored at the opposite end. The fire ignited toxic chemicals stored in the warehouse. The resulting toxic fumes inhibited the fire department's ability to fight the fire.
Although the blaze did not consume Monroe's calculators, the cartons suffered heat damage and were covered in toxic residue. The in-bond products were declared a loss, valued at trial at approximately $900,000.[6] Monroe settled with its insurer,[7] after which this subrogation action was brought against multiple defendants.
Before considering Monroe's claims against Intertrans it is first necessary to understand Monroe's claim of negligence *75 against IWDC. Monroe contended that its losses stemmed from IWDC's improper storage of toxic chemicals in its warehouse. Monroe alleged that IWDC failed to comply with several relevant fire code regulations applicable to the storage of toxic chemicals.[8] Monroe asserted that the code violations allowed more extensive involvement of toxic substances than would otherwise have been the case, and that by reason of the violations the fire department could not enter the building and use effective fire-fighting techniques. Monroe contended that as a result, the fire was more extensive than it otherwise would have been and resulted in toxic contamination that otherwise would not have existed.
As to Intertrans, Monroe made two claims pertinent here.[9] First, Monroe alleged that Intertrans was negligent in selecting the IWDC warehouse. As Monroe's agent, Intertrans owed Monroe a duty of reasonable care in choosing an in-bond warehouse. According to Monroe, Intertrans should have inspected the non-bonded area of the IWDC warehouse and should have discovered the fire code violations regarding storage of hazardous chemicals. The negligence count went to the jury and Intertrans was exonerated.[10]
Second, Monroe alleged breach of bailment. Monroe claimed that Intertrans and IWDC were both bailees of the in-bond goods. In essence Monroe asserted that Intertrans was the bailee, and IWDC was the subbailee. Monroe contended that Intertrans was vicariously liable for the negligence of IWDC, even if Intertrans itself was entirely without fault.
At trial, the court ruled as a matter of law that Intertrans was not vicariously liable for the negligence of IWDC. The court concluded that under the bailment count, Intertrans would be liable only if it was itself negligent. The trial court took the view that since the negligence count and the bailment count would both be governed by a negligence standard, the case should go to the jury solely under the negligence count. The jury found in favor of Intertrans on the negligence theory.
Monroe has appealed, contending that Intertrans is vicariously liable for the negligence of IWDC.

II
The first issue is whether the relationship between Monroe and Intertrans was that of bailor and bailee (as Monroe contends), or principal and agent (as Intertrans contends).
Bailment must be distinguished from agency. "The terms `bailment' and `agency' represent distinct concepts and involve different relationships, even though they may often comprehend some similar facts." 8 Am.Jur.2d Bailments § 28 (1980) (footnote omitted) (citing Lynch v. Walker, 159 Fla. 188, 31 So.2d 268, 271 (1947)). "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1 (1958).
[B]ailment is defined ... "as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt *76 with according to his directions, or kept until he reclaims it, as the case may be."
Dunham v. State, 140 Fla. 754, 192 So. 324, 326 (1939) (citation omitted).
The essential element of agency  that one person act for another subject to the latter's control  may be wholly lacking in a bailment, and, in fact, the interests of the parties may be completely antagonistic. The ordinary bailment, undertaken without some special provision, leaves no residue of control in the bailor as to how the bailed property is to be handled... .
8 Am.Jur.2d Bailments § 28 (footnotes omitted); cf. Restatement (Second) of Agency § 12 comment c (distinguishing agency from bailment).
The question is how to classify Intertrans' relationship to the goods which were stored in bond at the IWDC warehouse.[11] This dispute must be resolved in Intertrans' favor. From the start Intertrans made clear what services it could  and could not  provide. Intertrans undertook to procure storage for goods that arrived in Miami, and to arrange shipment of the goods whenever Monroe gave shipping instructions. Intertrans made clear, and Monroe knew, that Intertrans did not have a customs-bonded warehouse. As a matter of federal law, therefore, Intertrans could not take physical custody of the goods which were destined to be reimported to Latin America. Instead, federal law required that a bonded trucker take custody of the goods at the Port of Miami and transport the goods to the bonded warehouse. Similarly, federal law required that the goods destined for re-export be stored in a bonded warehouse. When instructions were given to export the goods to Latin America, Intertrans again was required to hire a bonded trucker to transport the goods from IWDC's warehouse to the Port, from whence the goods would be exported.
It is facially clear that with regard to the products held for export, Intertrans undertook only to act as Monroe's agent to procure a suitable bonded warehouse. Intertrans could not itself act as bailee. Its responsibility was to locate a bailee  a bonded warehouse which could store Monroe's in-bond goods.
Monroe says, however, that the result should be otherwise because Intertrans selected the IWDC warehouse, and Monroe was dependent on Intertrans' judgment in that regard. That argument does not change the analysis. Intertrans acted within the scope of the agency relationship. Intertrans was obliged to use due care and would incur liability if negligent. Here, of course, Intertrans was exonerated on the negligence claim.
In sum, when Intertrans obtained bonded warehouse space for Monroe, Intertrans was acting as agent and did not thereby become the bailee of the goods.[12]

III
Assuming for purposes of discussion that Intertrans was the bailee of the in-bond goods, the second issue is whether Intertrans is vicariously liable for the negligence of *77 IWDC.[13] The trial court rejected Monroe's argument for vicarious liability and ruled that Intertrans would be liable only if it was negligent in its selection of IWDC to serve as the bonded warehouse for Monroe's goods. The trial court was entirely correct.
The bailment in the present case is a bailment for mutual benefit. "A bailment for the mutual benefit of the parties is one in which the parties contemplate some price or compensation in return for the benefits flowing from the fact of bailment." Armored Car Serv., Inc. v. First National Bank, 114 So.2d 431, 434 (Fla. 3d DCA 1959).
Unless the parties have otherwise agreed, the bailee in a bailment for mutual benefit is governed by a negligence standard:
"Where a bailment is for mutual benefit, the bailee is held to the exercise of ordinary care in relation to the subject-matter thereof, and is responsible only for ordinary negligence. The bailee is not liable if the property bailed is injured by accident, or by some other means wholly without [his] fault; and, in the absence of some special stipulation, an injury to or loss of the property falls on the bailor."
Williamson v. Phillipoff, 66 Fla. 549, 64 So. 269, 271 (1914) (quoting Coombs v. Rice, 64 Fla. 202, 59 So. 958, 959 (1912)) (emphasis added). The test "is whether the bailee exercised that degree of care toward the goods that a reasonably prudent person would bestow on his own goods." Hollander v. Nolan Brown Motors, Inc., 272 So.2d 9, 10 (Fla. 3d DCA 1973). "A bailee is not an insurer of the property delivered into its keeping and is not liable for the loss of the thing bailed, except where there is a breach of the duty of the requisite degree of care." Fruehauf Corp. v. Aetna Ins. Co., 336 So.2d 457, 459 (Fla. 1st DCA 1976); see also 5 Fla.Jur.2d Bailments § 10, at 85 (1978) ("except where he has violated his contract with the bailor, [an ordinary bailee] is not liable for the loss of, or injury to, the thing bailed.") (footnote omitted).
These principles apply where there is a subbailment with the consent of the bailor. "We have not been cited to any authorities, nor has our research discovered any, in which it has been held that where a subbailment is made with the consent of the bailor, the original bailee is responsible to the bailor if the property be damaged by the negligence of the sub-bailee." Continental Mfg. Corp. v. Underwriters at Lloyds London, 185 Cal. App.2d 545, 8 Cal. Rptr. 276, 279 (1960).
The trial court reasoned that the same liability rules should apply to the present case as apply to bailees for mutual benefit generally. Here, the selection of IWDC as the in-bond warehouse was consistent with, and not in violation of, Intertrans' contract with Monroe. Intertrans had not agreed to act as an insurer for these goods and is therefore governed only by the standard of ordinary care. Consistent with well settled principles, Intertrans would be liable only if negligent in selecting IWDC to serve as the in-bond warehouse.[14] The question of negligence was submitted to the jury, and Intertrans was found not negligent.
In the present case, Intertrans carried out its responsibilities as agreed between the parties. Intertrans used due care in doing so, as demonstrated by the jury verdict finding that Intertrans was not negligent. Since Intertrans did not breach its contract with Monroe in any particular, and since Intertrans did not agree to act as an insurer of these goods, there is no basis for imposing liability on Intertrans.
The judgment is affirmed.
HUBBART, J., concurs.
BASKIN, Judge (dissenting).
I am unable to agree with the majority's characterization of the issue involved in this case: The sole issue on appeal is the propriety of the trial court's entry of a directed *78 verdict in Intertrans's favor on the breach of bailment count. Regardless of the jury's verdict on the negligence count, a motion for directed verdict on the bailment count "raises a question of law for the trial judge respecting the legal sufficiency of the evidence to sustain a verdict against the defendant." Deatrick Leasing Corp. v. Rand's Paint & Body Shop, Inc., 247 So.2d 532, 532 (Fla. 3d DCA), cert. denied, 252 So.2d 801 (Fla. 1971). A motion for directed verdict is not properly granted if a review of the record, considering the facts and reasonable inferences therefrom most favorable to plaintiff, reveals any evidence upon which the jury could find an acceptance of bailment. Deatrick Leasing Corp., 247 So.2d at 532. "If the appellate court finds, on review of an order directing a verdict, that the trial court erred as a matter of law in granting the motion, that judgment of the trial court will be reversed and the cause remanded for a new trial." Deatrick Leasing Corp., 247 So.2d at 532. Because the record establishes that such evidence did exist, the trial court erred in granting the directed verdict. Accordingly, I would reverse and remand for a new trial.
The record in this case contains sufficient evidence from which reasonable and legitimate inferences could be drawn to support a jury finding that Intertrans was a bailee: it had accepted the bailment of the goods and exercised control over them. Pursuant to Intertrans's contract with Monroe, Intertrans was responsible for routing the goods from the moment they arrived to the moment they left Miami. Intertrans undertook these duties by arranging for in-bond transportation of the goods from the dock to the storage facility and by arranging for storage. Intertrans, not IWDC, billed Monroe for these services. Although the majority classifies Monroe's goods in two categories, depending on their ultimate destinations  the United States or abroad, Intertrans's responsibilities respecting both categories of goods were identical. Intertrans was to arrange for all aspects of the goods' movements. Although Intertrans did not physically move the goods destined for reshipment abroad, it was responsible for arrangements to move the goods, including arrangements to ship those goods to their ultimate foreign destinations. Intertrans represented to Monroe that its customs-bonded warehouse application was pending approval. Until such time as its application was approved, it would arrange for alternate warehouse storage. Moreover, the relationship between the parties in this case, although susceptible of being interpreted as an agency relationship, falls under the classic definition of a bailment for mutual benefit: "a bailment for hire, whereby one person, for compensation, takes another's property into his care and custody... ." 5 Fla.Jur.2d Bailments § 3 at 73.
Intertrans had control of the goods and could have selected any of a number of ways to structure the transportation and storage arrangements. It may not now assert that it was not in control of the goods solely because they were not stored under its roof. Sentinel Enter., Inc. v. Harrington & Co., 353 So.2d 1238 (Fla. 3d DCA) (goods left at port damaged while awaiting transshipment were responsibility of outbound shipper; agent arranging for outbound shipment was bailee), cert. denied, 359 So.2d 1219 (Fla. 1978). Compare Florida Small Business Corp. v. Miami Shipyards Corp., 175 So.2d 46, 46 (Fla. 3d DCA 1965) (owner of boatyard where boat was usually moored not responsible for damage to boat because "for some two weeks prior to time the boat sank the plaintiff-owner had placed [boat] in possession and control of an employee to prepare it for sale and, after him, in the possession and control of the crew of a prospective purchaser... ."). Monroe was entitled to have this issue determined by a jury. The trial court should not have directed a verdict because a directed verdict was improper.
In defense of the directed verdict Intertrans argues that because IWDC was an independent contractor, Intertrans is not vicariously liable for IWDC's negligent acts. While the proposition is correct as a general rule, there are several exceptions to the rule. Fisherman's Paradise, Inc. v. Greenfield, 417 So.2d 306 (Fla. 3d DCA 1982); Mills v. Krauss, 114 So.2d 817 (Fla. 2d DCA 1959), cert. denied, 119 So.2d 293 (Fla. 1960). One exception is that "one who, by a specific agreement, undertakes to do some particular thing, or to do it in a certain manner, cannot *79 by employing an independent contractor, avoid responsibility for an injury resulting from the non-performance of any duty or duties which, under the express terms of the agreement or by implication of law, are assumed by the undertaker." Campbell v. Bellman, 293 So.2d 795, 796 (Fla. 3d DCA 1974); Mills, 114 So.2d at 819.
In the present case, Intertrans expressly undertook to handle Monroe's shipping and storage needs. Intertrans contracted with IWDC pending approval of Intertrans's customs-bonded warehouse application. In view of the obligation Intertrans assumed, the contractual duty may not be obviated by the use of another warehouse. Campbell; City of Coral Gables v. Prats, 502 So.2d 969 (Fla. 3d DCA), review denied, 511 So.2d 297 (Fla. 1987). "[A]lthough the duty to perform may be delegated to an independent contractor, the liability for misfeasance cannot be avoided by the person who obligated himself originally to perform the contract." Atchley v. First Union Bank of Florida, 576 So.2d 340, 343 (Fla. 5th DCA 1991). Intertrans's duty as bailee may not be erased by housing the goods at another warehouse. Intertrans was required under the agreement to warehouse Monroe's goods; the independent contractor defense does not avoid Intertrans's duty under the agreement.
Based on the foregoing reasoning, I would reverse the directed verdict and remand the case for a new trial.
NOTES
[1] United States Customs duties were to be paid at the time of importation.
[2] See 19 U.S.C. §§ 1555-57; 21A Am.Jur.2d Customs Duties & Import Regulations § 82 (1981); see also R.J. Reynolds Tobacco Co. v. Durham County, 479 U.S. 130, 134 n. 3, 107 S.Ct. 499, 503 n. 3, 93 L.Ed.2d 449, 457 (1986).
[3] See 19 U.S.C. §§ 1551-52; 21A Am.Jur.2d Customs Duties & Import Regulations § 81.
[4] Intertrans had applied for authority to operate a bonded warehouse, but United States Customs had not acted on the application at the time relevant here.
[5] The IWDC warehouse was divided into a bonded and a non-bonded area. The fire was set in the non-bonded area.
[6] Intertrans disputed the Monroe computation and contended that the loss was approximately $530,000.
[7] According to the trial testimony, insurance for goods in a bonded warehouse is customarily carried by the owner of the goods.
[8] According to the evidence, IWDC failed to segregate the toxic chemicals as required, and failed to post required placards outside the warehouse which are designed to inform the fire department of the toxic nature of the chemicals inside the building. IWDC had failed to obtain a required permit and stored nearly four times the permissible amount of one chemical. The IWDC sprinkler system was designed for a facility which did not house toxic chemicals, and was inadequate for a facility with toxic chemicals.
[9] Not at issue here is Monroe's claim that Intertrans was strictly liable under the Carmack Amendment, 49 U.S.C. § 11707. See generally 1 Saul Sorkin, Goods in Transit § 5.02(1)(b) (1994). That claim was resolved adversely to Monroe and Monroe has not appealed on that point.
[10] The jury answered in the negative the following interrogatory: "Was there negligence on the part of the defendant Intertrans Corporation which was a legal cause of damage to Monroe Systems for Business, Inc.?"
[11] Intertrans' other activities are easy to classify. When Intertrans held Monroe's imported goods in Intertrans' own warehouse, Intertrans was acting as warehouseman and was plainly a bailee. See 13 C.J.S. Carriers § 446, at 395 (1990).

When Intertrans carried out Monroe's instructions to withdraw goods from warehouse storage and ship them, Intertrans acted as a shipper's agent. See 1 Saul Sorkin, Goods in Transit § 5.30.
[12] We would have an entirely different case if Intertrans had held itself out as having the capability to store the to-be-exported goods on its own premises. If Intertrans had represented that it would use its own warehouse for the to-be-exported goods, and then without the consent of Monroe placed the goods elsewhere in a third-party bonded warehouse, clearly Intertrans would be liable for any loss which thereafter occurred.

It is generally held that if the bailee, without authority, deviates from the contract as to the place of storage or keeping of the property, and a loss occurs that would not have occurred had the property been stored or kept in the place agreed on, he is liable even if not negligent. This rule regards the bailee as assuming, by his breach of contract, the risk of any injury that would not have resulted had he not committed the breach, though the place to which he moves the goods is equally safe and proper for the purpose.
8 Am.Jur.2d Bailments § 205, at 930-31 (footnotes omitted).
[13] Assuming that Intertrans was the bailee, IWDC would be a subbailee.
[14] By comparison, if (a) Intertrans had been authorized to store the in-bond goods in its own warehouse, (b) it did so hold Monroe's in-bond goods, and (c) the goods were destroyed by fire, Intertrans would be liable if negligent, but not otherwise.