976 So.2d 1 (2007)
NRD INVESTMENTS, INC., Appellant,
v.
Dr. Nelvis VELAZQUEZ, Appellee.
No. 3D07-1243.
District Court of Appeal of Florida, Third District.
December 5, 2007.
Rehearing Denied March 20, 2008.
*2 Hinshaw & Culbertson and Monica T. Cronin and Ronald L. Kammer; Berman Rennert Vogel & Mandler, Miami, for appellant.
De Cardenas, Freixas, Stein & Zachary and Barry A. Stein, for appellee.
Before RAMIREZ, SHEPHERD, and CORTIÑAS, JJ.
CORTIÑAS, Judge.
Appellant, NRD Investments, Inc. ("NRD"), seeks review of an order granting a temporary injunction (the "Injunction Order") in favor of appellee, Dr. Nelvis Velazquez ("Dr. Velazquez"), and a subsequent order denying modification of the injunction or rehearing (the "Denial Order").
Dr. Velazquez is a tenant in a building presently owned by NRD where she has been leasing office space since approximately two years prior to NRD's purchase of the building in November, 2006. On or about October 9, 2006, Dr. Velazquez and NRD entered into an agreement (the "Agreement") whereby NRD would reduce Dr. Velazquez's leased office space by an area of fifty square feet in exchange for providing Dr. Velazquez with an outside door and a proportionate reduction in rent.[1] The language of the Agreement provides, in pertinent part:
1. NRD shall construct, at zero cost to Dr. Velazquez, the outside entrance door to Unit 110 on the South side of the Building (the "New Door"), as specified in plans to be provided within 30 days of the date of this Agreement. NRD will commence the preparation of the plans and construction of the New Door immediately.
2. Unit 110 shall be reduced by approximately 50 square feet (a 10x5 square foot space located on the northwest corner of the current waiting room), which shall be used to construct the Building's security area, as specified in plans to be provided within 30 days of the date of this Agreement. NRD shall immediately commence the preparation of plans and construction of replacement walls in the waiting area of Unit 110 (the "Replacement Walls").
3. Access to Unit 110 in order to perform the work on both the New Door and the Replacement Walls shall be coordinated with Dr. Velazquez, however, it is agreed that access to Unit 110 shall be available and that all work can begin immediately.
(Emphasis added).
On November 9, 2006, thirty-one days after the execution of the Agreement, Dr. Velazquez hand-wrote "[t]oday is Nov. 9, 2006[.] This Agreement is now null and void," on a copy of the Agreement. She then signed this notation and delivered the annotated Agreement to NRD. More than two months later, on January 18, 2007, NRD advised Dr. Velazquez in writing that construction would commence on January 20, 2007. On January 19, 2007, Dr. Velazquez delivered another copy of the Agreement with her "null and void" notations to NRD's in-house counsel. NRD's counsel then went to Dr. Velazquez's suite *3 and the two engaged in an argument that ultimately resulted in both parties calling the North Miami Police Department ("NMPD").
The NMPD officer arrived and after being apprised of the situation, "counseled both parties and recommended that [NRD] delay construction in [Dr. Velazquez's] office until [Dr. Velazquez] agreed or a judge issued an appropriate order." Demolition of the outside wall of the doctor's suite commenced on Saturday, January 20, 2007, and by the time Dr. Velazquez arrived at her office, construction was well underway and the interior drywall had been erected to mark off a sixty-square-foot area. In what was apparently a burst of anger and frustration, Dr. Velazquez kicked two drywall panels in the construction causing damage to the drywall. She was subsequently arrested by an off-duty NMPD officer hired by NRD to serve as security during the course of construction. The arresting officer had not been informed of the events that had transpired previously. Dr. Velazquez was charged with criminal mischief and resisting arrest without violence. The latter charge resulted from Dr. Velazquez's attempts to explain the situation to the officer while protesting her arrest.
Construction in Dr. Velazquez's office remains incomplete. NRD has not yet installed the New Door, despite the language in the Agreement stating that it would be done "immediately." The Injunction Order includes, among the findings of fact, that "Dr. Velazquez's professional practice has been harmed, in that she has been forced to practice in an office with unsightly and dust-filled physical conditions, thus reflecting, to a reasonable person, on her personal judgment and the viability of her practice."
The circuit court, after carefully reviewing the facts and evidence before it, determined that the most equitable resolution was the issuance of a temporary injunction requiring NRD to restore the condition of Dr. Velazquez's office to its condition prior to the commencement of construction on January 20, 2007.
NRD argues that Dr. Velazquez did not demonstrate entitlement to injunctive relief. "The requirements for establishing the right to preliminary injunctive relief are: (a) the likelihood of irreparable harm, and the unavailability of an adequate remedy at law, (b) the substantial likelihood of success on the merits, (c) that the threatened injury to petitioner outweighs any possible harm to the respondent, and, (d) that the issuance of the injunction will not disserve the public interest." Sanchez v. Solomon, 508 So.2d 1264, 1265 (Fla. 3d DCA 1987). The circuit court, upon reviewing the evidence before it during multiple hearings, concluded that Dr. Velazquez had properly demonstrated entitlement to a preliminary injunction.
In Florida, the "trial court is afforded broad discretion in granting, denying, dissolving, or modifying injunctions, and unless a clear abuse of discretion is demonstrated, an appellate court must not disturb the trial court's decision." Jackson v. Echols, 937 So.2d 1247, 1249 (Fla. 3d DCA 2006) (citing Wise v. Schmidek, 649 So.2d 336, 337 (Fla. 3d DCA 1995)). We find no abuse of discretion by the circuit court.
With respect to the first requirement, Dr. Velazquez has demonstrated that the new construction by NRD and the consequent loss of the sixty-square-foot area has deprived her of the full use of her leasehold. The present condition of her office, it stands to reason, could have a damaging impact upon her practice which would be neither easily quantifiable nor *4 easily corrected. This potential harm, which includes but is not limited to, the loss of goodwill and patronage from her patients, may be irreparable. Moreover, while there may exist a remedy at law, nothing presented demonstrates that any such available legal remedy is adequate. Florida courts have held that when both legal and equitable remedies exist, in order to determine which of the two provides the most adequate remedy, one must consider which will offer the most expeditious relief. McNorton v. Pan Am. Bank, 387 So.2d 393, 399 (Fla. 5th DCA 1980). Given the dispute over the contractual entitlement to perform the construction in Dr. Velazquez's office, and the present and continuing damage to Dr. Velazquez's practice, the most sensible and expedient remedy is to restore the office to its pre-construction condition and prevent any further construction until the contractual disputes are resolved.
Dr. Velazquez has likewise demonstrated the likelihood of success on the merits. There are numerous portions of the Agreement which either create an ambiguity or lend themselves to being interpreted in favor of Dr. Velazquez when considering her claim for breach of contract. One major issue is the discrepancy between the amount of space called for in the initial plans prepared by NRD's engineer and the amount of space specified in the Agreement. While the Agreement specifically noted the surrender of a fifty-square-foot area by Dr. Velazquez, the plans and the construction ultimately performed occupy an area of sixty square feet. Although the Agreement provides that the plans are to be prepared "immediately," the plans demonstrating the sixty-square-foot space were prepared and in NRD's possession prior to the drafting of the Agreement. These plans were not provided to Dr. Velazquez at the time the Agreement was signed.
The Agreement contains multiple references to the preparation of plans and construction commencing "immediately," even though NRD did nothing other than file plans with the City until commencing construction in January. Lastly, there is an issue as to whether or not NRD properly entered into the Agreement with Dr. Velazquez because, when the Agreement was executed, NRD was not the owner of the building and despite constant references to aspects of performance that were to occur or commence "immediately," there was no timeframe set up within which the building had to be acquired. Consequently, the Agreement is ambiguous as to when NRD's promises would be fulfilled. There is a general preference in Florida to interpret contractual ambiguities against the drafter. City of Homestead v. Johnson, 760 So.2d 80 (Fla.2000); Hurt v. Leatherby Ins. Co., 380 So.2d 432 (Fla.1980); Am. Agronomics Corp. v. Ross, 309 So.2d 582 (Fla. 3d DCA 1975). In light of this preference, and because of the numerous ambiguities in the Agreement, Dr. Velazquez has adequately demonstrated a likelihood of success on the merits of this case.
Appellant also argues that the injunction is overbroad and alters the status quo. The circuit court was correct in stating in its order that "[t]he primary purpose of entering a temporary injunction is to preserve the status quo pending the final outcome of a cause." Yardley v. Albu, 826 So.2d 467, 470-71 (Fla. 5th DCA 2002). "The status quo which will be preserved by a preliminary injunction is the last, actual, peaceable, uncontested condition which preceded the pending controversy." Id. at 471. quoting Chicago Title Ins. Agency of Lee County, Inc. v. Chicago Title Ins. Co., 560 So.2d 296, 297 (Fla. 2d DCA 1990). Given the dispute over *5 NRD's entitlement to perform the work under the Agreement and whether or not there has been a breach or termination of the Agreement, the last, uncontested condition of Dr. Velazquez's office was that which existed prior to the January 20, 2007 construction. The court correctly ordered NRD to return the office to its pre-construction condition.
Based upon the facts in the record, it is also apparent that the threatened injury to Dr. Velazquez outweighs any possible harm to NRD. Other than the possible costs of demolishing the new construction returning the office to its former condition, and the costs of reconstruction should NRD be successful at the trial level, there appear to be no other damages to NRD. However, Dr. Velazquez faces the possibility of losing an unascertainable amount of business, clientele, and goodwill due to the unsightly and uncomfortable condition of her office. Taking into account the possibility that NRD may suffer damages if it is ultimately adjudicated that the Agreement is enforceable and NRD may proceed with construction, the circuit court required Dr. Velazquez to post a $15,000 bond, which she has already done. As such, NRD is safeguarded against any foreseeable damages, whereas absent the injunction, the threatened injury to Dr. Velazquez would not be adequately addressed.
Furthermore, the circuit court's order specifically provided that the court "shall hold a final hearing on the parties' rights under the [Agreement] as quickly as possible but no later than 30 days of NRD's notice that it is ready for trial on these issues. The parties shall be entitled to immediate discovery limited to the scope of the hearing." NRD had the option to notice the matter for trial and proceed on the merits in an expeditious fashion, which did not occur.
The injunction as entered does not disserve the public interest. When NRD's counsel and Dr. Velazquez argued prior to construction, they contacted their local police department for guidance. The officer's instructions to NRD were clear: do not perform construction in the absence of agreement from Dr. Velazquez or a court order. NRD chose to ignore the officer's peaceable and facially sound solution and, nevertheless, commenced demolition and construction. As noted in the Injunction Order, "[i]t is in the public interest that private parties who seek the assistance of the police abide by their suggestions when they are facially sensible." To find otherwise would remove any force or effectiveness from police officers instructing private citizens on peaceful, albeit temporary, solutions to disputes pending further determination from another authority.
There is also a public interest in protecting leaseholds against incursions not authorized by either law or contract. Given the nature of the dispute between the parties, it is important to have the contractual issues resolved before any interference in the lessee's enjoyment of her property occurs. The nature of Dr. Velazquez's profession necessitates that her patients have a comfortable environment, the disruption of which poses a very real threat of loss of business. The injunction, as issued in this case, prevents further damage from occurring and disallows unnecessary interference of Dr. Velazquez's practice and livelihood. Accordingly, it is in the public interest to prevent the unnecessary disruption of a lessee's business without a clear contractual right.
NRD also argues that allowing the injunction to stand as ordered would allow parties to unilaterally declare a contract to be invalid midway through a project and require the performing party to deconstruct the work performed until all contractual disputes are resolved. NRD misses the point. Here, NRD's demolition commenced after Dr. Velazquez had nullified *6 the Agreement and twice given NRD notice of the cancellation. Whether or not the Agreement was properly nullified is, under our legal system, left to trial courts and finders of fact. The circuit court in this matter was uniquely situated to hear and weigh the evidence before deciding whether or not an injunction was the most appropriate and judicious remedy. As is evident from the circuit court's comprehensive, detailed, and well-reasoned order, consideration was given to the myriad of facts in this case and the applicable law before a decision was rendered.
Lastly, NRD argues that there were no evidentiary hearings held in this matter and, therefore, that the injunction was improper. The transcripts of the numerous hearings held by the circuit court demonstrate that on, multiple occasions, the parties presented evidence, including but not limited to, plans, correspondence, and photographs. Moreover, NRD never objected to the manner in which the hearings were being conducted, thus the issue has not been preserved for appeal.
For the foregoing reasons, we affirm the order granting the temporary injunction and the order denying modification of the injunction or rehearing.
NOTES
[1] Johnson & Wales University, the actual owner of the building when the Agreement was executed, was also a signatory to the Agreement.