SALTER, J.
Angela O’Brien appeals a final order authorizing an assignee for the benefit of creditors,[1] Daniel Stermer, to sell 1,000 ounces of silver Ms. O’Brien thought she had bought, paid for, and owned. On the record relating to the underlying Ponzi scheme, however, we are constrained to affirm the trial court. Ms. O’Brien was the victim of a fraud, not an owner or bailor of the silver purportedly sold to her.

Background

Diversified Investment Group, Inc., and Global Bullion Exchange, LLC, working from offices in Lake Worth, purported to sell interests in precious metals to investors. The company owner, Jamie B. Cam-pany, later admitted that he was running a Ponzi scheme and that the companies did not purchase and segregate specific coins or other forms of silver for individual investors.
*1247 Ms. O’Brien, a disabled widow living in Astoria, New York, received an unsolicited call from Global Bullion Exchange in 2008 urging her to invest some of her retirement savings in precious metals. She was assured that “precious metals were on the rise, a wise investment, and that [she] would not lose the funds.” In 2008 and 2009 she paid $20,000 to Global Bullion, purportedly for 50 ounces of palladium and 1,000 ounces of silver. Neither of these assets was delivered to her, and she was not provided any document confirming that Global Bullion had segregated or separately identified her metals from those purportedly sold to other investors.
Ms. O’Brien received a computer-generated account statement showing that her investment had increased in value over $17,000 in her first year of ownership, but the statement provided only one additional piece of information — her Global Bullion representative was identified as Nick Gan-esh. The parties’ investigation and record material filed below, however, provide no information from Mr. Ganesh or anyone else to suggest that Ms. O’Brien’s metals were held under a bailment or escrow.
To the contrary, it is uncontroverted that the companies “sold” (and received payment for) far more precious metals than the companies acquired from bona fide dealers in precious metals. The companies were vehicles for a fraudulent scheme, and they failed. The companies designated Mr. Stermer, a specialist in liquidating failed companies, as “assignee for the benefit of creditors” under section 727.104, Florida Statutes (2010) to marshal and sell the companies’ assets so that the net proceeds could be paid to creditors.
In 2010, Mr. Stermer filed a motion for authority to sell a variety of precious metals, including over 4,000 ounces of silver, that had been turned over to him by the companies’ owner, Mr. Campany. Mr. Campany’s affidavit in support of the motion stated that he found the silver in his home and that it had been bought by Global Bullion, but not for a specific investor. Ms. O’Brien filed a motion in opposition, supported by an affidavit. She maintained in her proof of claim that she “had a paid up silver and palladium position, as bailor, with goods put up in storage and to be delivered.” Should any silver be sold, she alleged that a portion should be excluded from sale and delivered to her. The trial court granted Mr. Stermer’s motion, but ordered that 1,000 ounces of silver be retained pending further order of the court.
In January 2011, Mr. Stermer filed a renewed motion to sell the remaining 1,000 ounces of silver. Ms. O’Brien again objected and filed an affidavit in opposition. After the hearing, the trial court granted the motion and disallowed Ms. O’Brien’s objections. The court found that there were other similarly-situated investors[2] and that it was in all creditors’ best interests for the assets to be sold and the net proceeds distributed ratably. It also found that the companies had no bailment relationship with any customer and that no specific customer had an interest in these metals or their proceeds. Ms. O’Brien appealed.

Analysis

Ms. O’Brien raises three arguments on appeal. She asserts that there was an implied-in-fact bailment; that granting the *1248 renewed motion violated Ms. O’Brien’s rights; and that the trial court’s failure to conduct an evidentiary hearing warrants reversal. Each of the arguments lacks support in the record and applicable Florida law.
There is no bailment implied-in-fact in this case. Although Ms. O’Brien insists that the silver was set aside for her, there is no record evidence to support this contention. There is also no evidence that 1,000 ounces were purchased with her funds or segregated as her separate property. None of the bailment elements exist here. Monroe Sys. for Bus., Inc. v. Intertrans Corp., 650 So.2d 72, 75 (Fla. 3d DCA 1994) (explaining that a bailment is the “delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered” (quoting Dunham v. State, 140 Fla. 754, 192 So. 324, 326 (1939))). Ms. O’Brien did not deliver the silver at issue to the companies, and the silver turned over to Mr. Stermer by Mr. Campany was not shown to have been purchased for Ms. O’Brien.
While the trial court’s earlier order did require that 1,000 ounces of silver be set aside pending further order, this did not create an entitlement on the part of Ms. O’Brien, especially in view of the plight of other similarly situated investors. Many other victims had also fully paid for what they thought were “their” precious metal purchases. The trial court’s interlocutory order declining to permit Mr. Stermer to sell the last 1,000 ounces of silver did not preclude the court from authorizing that sale after further investigation revealed no possible nexus between the silver and Ms. O’Brien’s payments. “[A] trial court has inherent authority to reconsider and modify its interlocutory orders.” AC Holdings 2006, Inc. v. McCarty, 985 So.2d 1123, 1125 (Fla. 3d DCA 2008).
Finally, no evidentiary hearing was required. The parties provided affidavits and copies of pertinent checks and other records to each other and to the court. Neither side objected to the records produced by the other, and the sworn statements and documents regarding the pivotal question (whether specific payments could be tied to specific assets) were not in conflict. Ms. O’Brien’s argument on this point was not preserved for appeal. See NRD Invs., Inc. v. Velazquez, 976 So.2d 1, 6 (Fla. 3d DCA 2007).

Conclusion

This fraudulent scheme apparently escaped, at least for a time, the attention of the federal and state authorities regulating commodities trading and the exploitation of consumers like Ms. O’Brien. Ponzi schemes seem to recur again and again in South Florida, sometimes involving diamonds, sometimes oil, and in this case, gold, palladium, and silver. The names of the scams seem to be endless permutations of “gold bullion,” “international,” “global,” “diversified,” and “precious.” The common denominator is that the commodities are imaginary, or are the undivided “property” of a host of victims, not any one of them. The circuit court properly authorized the sale of the silver by Mr. Stermer, and at this point Ms. O’Brien can only hope that the process of liquidation will yield some net recovery on her claim.
Affirmed.

. Ch. 727, Fla. Stat. (2010).

. The record indicates that over 500 creditors, among over 1,500 identified in Mr. Stermer’s investigation of Global Bullion and Diversified Investment documents, filed over $16 million in claims. The value of recovered assets — including cash, a limited quantity of precious metals, a 2009 Mercedes Benz S-63, and a 34-foot Sea Ray boat — appear likely to result in a small percentage distribution to the creditors.